No. 19,284.

ROY L. CLEERE, ET AL., AS COLORADO BOARD OF FUNERAL DIRECTORS AND EMBALMERS *v.* GLENNA MASON BULLOCK.
(361 P. [2d] 616)

Decided April 24, 1961.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. CLIFTON A. FLOWERS, Assistant, for plaintiffs in error.

Messrs. ENOS, BUCHLER & DEISCH, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFFS in error, here referred to as defendants, are members of the State Board of Funeral Directors and Embalmers. They seek review by writ of error of a judgment of the district court holding unconstitutional 1957 Supp. C.R.S. 61-3-8. The defendant in error, as plaintiff below, instituted the present action. The complaint sets forth three claims: (1) mandamus to compel

defendant Board to issue a license as funeral director; (2) declaratory judgment that certain provisions of the Funeral Directors and Embalmers Code of 1957 are unconstitutional; and (3) injunctive relief against the enforcement of the mentioned statute. Following denial of defendants' motion to dismiss, an answer was filed and the cause was tried to the court. At the close of plaintiff's case, the first claim was dismissed, and at the conclusion of the trial judgment was entered for plaintiff on her second and third claims.

Plaintiff's application to the defendant Board for a Funeral Director's license was denied on the ground that she had not taken a one year course at an approved or accredited school of mortuary science as required by 1957 Supp. C.R.S. 61-3-8. She thereupon filed the described action. The evidence disclosed that plaintiff had been engaged in the mortuary business in Colorado, as co-owner with her husband of the Bullock Mortuary in Englewood, since August 1951 when the Bullock Mortuary was first opened; that the Bullock Mortuary is a valuable and profitable business, worth in the opinion of the plaintiff upwards of one hundred thousand dollars. From 1951 to the time of trial plaintiff had handled the management and supervision of the business in the absence of her husband, Z. Realph Bullock, who was shown to be a Colorado licensed funeral director and embalmer, although plaintiff herself has never been so licensed.

It further appears that there are some twenty or twenty-one accredited schools or colleges of mortuary science in the United States, all requiring the taking of courses in the art of embalming along with other subjects. The subjects generally taught, in addition to embalming, are chemistry, pathology, hygiene, sanitation, restorative art, mortuary management, anatomy, physiology, business law, accounting and bacteriology. Plaintiff never attended such a school. She had, however, attended college for two years and did have academic col-

lege credits totaling at least sixty-four semester hours or ninety quarter hours.

Further testimony was to the effect that not all dead human bodies are required by Colorado law to be embalmed, but that approximately ninety-eight per cent of all such bodies are embalmed; that in some areas of the state there are mortuaries in which they do not have licensed embalmers in their regular employ on hand at all times.

There was conflict among the expert witnesses as to (1) whether a funeral director ever had to determine if a corpse was infected with a contagious disease, (2) whether a funeral director ever had to determine if a person were, in fact, dead, (3) whether a funeral director ever had to determine if a person had died a felonious death, (4) whether a living person ever contracted a contagious disease from a corpse, and (5) whether it was necessary or desirable that a funeral director have the technical knowledge and training that he would acquire by attending a school of mortuary science for one year as required by the statute.

The testimony indisputably shows that while it is desirable that a funeral director have some knowledge of embalming, he would never be called upon to actually embalm a body. A licensed embalmer would be called to perform this function. A funeral director is expected to manage the mortuary and also to supervise the work of the embalmer. Most of the work of the funeral director has to do with mortuary administration. He is mainly concerned with the various details of a funeral other than embalming.

Other testimony established that a funeral director is sometimes called upon, in the absence of an embalmer, to detect the presence of a contagious disease and to take steps to prevent its spread, although the evidence is inconclusive as to whether such disease can be communicated to a living person by a dead body. The funeral director has the duty of maintaining the premises in a

sanitary condition, and must on occasion ascertain whether a death is attributable to a criminal agency.

There was testimony on both sides of the question of whether a formal education is either desirable or necessary. There is no dispute, however, that the course available in the twenty-one recognized institutions throughout the United States does not emphasize the duties of the funeral director but are chiefly related to training the embalmer. A small percentage of the school year is devoted to funeral directing by a course designed to prepare the student for embalming as well. There is no school which understakes to train funeral directors.

The statute classifies the embalmer and the funeral director separately. 1957 Supp. C.R.S. 61-3-6 (5), supra, defines "embalmer" as:

" * * * a person engaged in or holding himself out as engaged in disinfecting or preserving dead human bodies and duly licensed as such under the existing laws of the State of Colorado."

Notwithstanding the wide variance in the duties of these positions, the statute sets up identical requirements for both. 61-3-8 provides that in order to qualify to take the examination as funeral director:

" * * * the applicant shall be a resident of the State of Colorado and shall be over twenty-one years of age, of good moral character and must have at least one academic year's course in an approved or accredited school or college of mortuary science, * * * "

He is also required to have two years of pre-funeral director study in an approved accredited college. A further requirement demands that the applicant shall have served at least one year as an apprentice and shall have assisted in conducting at least twenty-five funeral services.

61-3-16 sets up the requirements for taking the embalmer's examination. The age, character and educational requirements are identical with those of the funeral director. The embalmer must also have served one

year's apprenticeship. The difference is that he is required to have assisted in " * * * the embalming of at least twenty-five dead human bodies."

The evidence indicates that the licenses which have heretofore been granted have in all instances been combination funeral director and embalmer licenses. It would appear from a reading of the record that Mrs. Bullock is the first applicant ever to demand to be given the funeral director examination without also taking the embalmer's examination.

At the conclusion of the trial, the court entered informal and later formal findings holding 61-3-8 unconstitutional to the extent that it requires a funeral director to have had one year in a mortuary school and two years of college. The court's finding and conclusion as it relates to the present case reads as follows:

"That the requirement of Chapter 61-3-8 of CRS 1953 requiring the Plaintiff to have at least one academic year's course in an approved or accredited college or school of mortuary science showing the completion of at least 64 semester hours or 90 quarter hours of curriculum, bears no reasonable relation to the activity sought to be regulated, namely, that of the business of funeral directing, and consequently is an unnecessary, excessive, and therefore invalid exercise of the police power.

"CONCLUSIONS OF LAW:

"1. That the portion of Chapter 61-3-8, CRS 1953, requiring that in order to qualify for the examination for a license as a funeral director in the State of Colorado that such applicant '— must have attended at least one academic year's course in an approved or accredited school or college of mortuary science, and prior academic college showing the completion of at least sixty-four semester hours or ninety quarter hours period of curriculum,' is in violation of the Fourteenth Amendment of the Constitution of the United States, and Section 25 of Article 11 of the Constitution of the State of

Colorado, and Section 25 of Article V of the Constitution of the State of Colorado.

"2. That the above recited portion of the said statute, providing for general college training and an academic year in a college of mortuary science, deprives the plaintiff of a valuable property right and privilege without due process of law."

I.

The Funeral Director and Embalmers' Code which was enacted in 1957 is a comprehensive set of laws seeking to impose regulations in this entire field. We are not concerned with the provisions other than 61-3-8, supra, except to the extent that such other provisions bear on the issue before us. It is noteworthy, however, that the declaration of policy contained in 61-3-1 states that the statute is adopted * * * as an exercise in the police and health powers of the state for the prevention of the spread of infectious and contagious diseases; for the protection of the sanitation, health and welfare of the people of the state * * * " and sub-section 1 further finds "that all of the provisions of this article and regulations authorized to be made are necessary to effectuate its purpose; and all of the provisions of this article shall be construed liberally."

■ It must be noted at the very outset that plaintiff was shown to have satisfied the statutory requirement of two years in college and since she was not shown to be adversely affected by this provision, its constitutionality was not called into question and there was no occasion for the holding that it imposed an unreasonable and arbitrary requirement.

In isolating and defining the ultimate issue on which the case turns, it is helpful to note that the plaintiff does not contend that the General Assembly lacks power to regulate mortuaries in the exercise of its legislative powers relating to the public health, nor does she maintain that it is improper for the defendant Board to require her to submit to a qualifying examination and to

have some knowledge of mortuary operation. Her objection is limited to the requirement that she attend an accredited school of mortuary science for a period of one academic year. Therefore, the limited question for our determination is whether that portion of 61-3-8, supra, which requires an applicant for examination as funeral director to have had one academic year's training at a school of mortuary science bears a reasonable relation to the protection of the health of the community and is a valid exercise of the police power.

## II.

From the facts adduced at the trial, it would appear that while it is desirable for a funeral director to have knowledge of embalming and related problems such as recognition of disease and recognition of death occasioned by an unlawful act, such knowledge is in no sense necessary to the performance of the work of the funeral director. His function is limited to supervising the mortuary personnel, contacting and communicating with relatives of the deceased, organizing the details of the funeral and the interment. Where the services of an embalmer are necessary such services are obtained, and in the small communities an embalmer is brought in if the mortuary involved does not employ one regularly. It would appear that the only justification for requiring that a funeral director have all the qualifications of the embalmer is that he will be technically qualified to supervise the work of the embalmer. However, it is not shown that such supervision is appropriate or necessary.

The general scope of the police powers as applied to undertakers is set forth in various of the authorities. 54 Am. Jur. 511, *Undertakers and Embalmers,* sec. 5; 23 A.L.R. 71, 104 A.L.R. 402. From these it is clear that the state may require undertakers and embalmers to obtain licenses before they engage in the practice thereof, and may establish standards of efficiency for those applying for licenses to engage in such occupations. The limitation is that all such regulations must meet the test of

reasonableness and appropriateness. The tendency has been to condemn provisions which impose regulations not shown to be necessary to the preservation of the public health, safety or morals. A regulation so condemned was one requiring that an undertaker have the same qualifications as an embalmer. The Supreme Court of Wisconsin called attention to the vice of this type of regulation in the case of *State ex rel. Kempinger v. Whyte,* 177 Wis. 541, 188 N.W. 607, 23 A.L.R. 67, when it said:

"Since embalming is not compulsory, since it is not universally practiced, why require every undertaker to have an embalmer's license before he can bury the dead? The qualifications required for obtaining an embalmer's license would add nothing to his fitness for burying an unembalmed body. It would add nothing to public health, safety, convenience, comfort, or morals. A police regulation restricting to the extent of prohibition an ancient, honorable, and necessary calling must justify its validity on the ground that it is essential to the public health, safety, convenience, comfort or morals. This statute has no such sanction. It was beyond the power of the legislature to make it a valid enactment."

In *People v. Ringe,* 197 N.Y. 143, 90 N.E. 451 (1910), the New York Court of Appeals considered a statute which required one seeking a license as an undertaker to have been previously licensed as an embalmer and, in addition, to have been employed as an assistant to a licensed undertaker for a period of at least three years. The Court conceded that it was within the power of the legislature to determine " * * * that undertakers bear such relation to the public health and welfare that they should be subject to regulation and license." At the same time it noted that the undertaking business does not require a knowledge of embalming and that the public health is not served by compelling an undertaker to have this specialized skill. On this it was said:

"The work of an embalmer and that of an undertaker

can, in most instances in the interests of economy and that orderly procedure desirable in the performance of such work, be done by the same person, but the public health does not require that an embalmer be an undertaker, or that an undertaker be an embalmer. The business of undertaking has been carried on for generations, particularly in the rural districts, by persons not holding embalmers' licenses and who have no special knowledge of the work of embalmers. There is nothing that occurs to us, or that has been called to our attention, to indicate any danger to public health in permitting a person, otherwise qualified, to carry on the business of undertaking solely because he is not a licensed embalmer. * * * "

The Massachusetts Court reached the same conclusion in *Wyeth v. Board of Health of City of Cambridge,* 200 Mass. 474, 86 N.E. 925, as did the Maryland Court of Appeals in *State v. Rice,* 115 Md. 317, 80 Atl. 1026. The latter court held invalid a provision requiring an undertaker to have been employed at least two years prior to his application by a person or firm engaged in the work of the practice of embalming and undertaking and to have skill and knowledge of the said business. That part of the act which required the applicant to have skill and knowledge in the business of embalming was held to be invalid as unnecessary to the preservation of the public morals, public safety or welfare of the public. It was there reasoned:

" * * * that he shall be possessed of skill and knowledge in the business of embalming, has no relation to public health, or to public morals, public safety, or the welfare of the public, said section 8 as amended is in violation of both the fourteenth amendment of the Constitution and the twenty-third article of the Declaration of Rights of Maryland, which protect the liberties, privileges and rights of citizens against undue legislative interference. * * * "

*Gholson v. Engle,* 9 Ill. (2d) 454, 138 N.E. (2d) 508,

a recent decision of the Illinois Supreme Court, voided a statutory provision requiring a funeral director to be a registered embalmer. In pointing up the lack of relationship between the demands of the Act and the legitimate police power of the state, the Court declared:

"The record does not, in our opinion, establish that public health considerations justify the requirement that a funeral director be a licensed embalmer. The funeral director is concerned primarily with the amenities of the funeral service. Proper performance of his other functions, such as removing and dressing the body, ascertaining the cause of death, and inspecting the body while it is in the coffin, does not require a year of college, nine months at an embalming school and a year's service as an apprentice embalmer. Nor are these qualifications necessary in order that he may effectively supervise the work of the embalmer. Specialized training is not required in order to recognize the conditions that require further work on the part of the embalmer. We hold, therefore, that the circuit court was correct in determining that this provision violates section 2 of article II of the constitution, S.H.A."

The contrary decisions such as *Board of Funeral Directors v. Cooksey,* 147 Fla. 337, 3 So. 502; *Walton v. Commonwealth,* 187 Va. 275, 46 S.E. (2d) 373, are not persuasive. The better reasoned and majority viewpoint holds that a funeral director or undertaker cannot be compelled to have all of the qualifications of an embalmer. This rule recognizes the practical distinction between the two occupations. It differentiates the former on the basis that it demands general knowledge only and not the specialized skill which the embalmer must have.

III.

Accepting the proposition that a statute which requires a funeral director to have all of the skill and knowledge of an embalmer, constitutes an arbitrary exercise of police power, the question remains whether the

terms of the statute here under consideration are such as to require it to be condemned as unnecessary and capricious legislation. We hold that it does. While the two occupations are separately treated in the Embalmers' Code, it is nevertheless clear that the standards applicable to both are essentially the same, requiring that prior to the apprenticeship stage of training applicants must acquire the same schooling. Furthermore, the practice of the Board has been to issue embalmer and funeral director licenses together. The mere fact that the statute contains distinct definitions for these occupations and describes them in separate sections of the statute does not mean that the regulatory treatment prescribed differs from that found in the cited cases including *Gholson v. Engle,* supra. One wishing to take the examination for funeral director must show that he has completed the required schooling and formal training demanded of one applying for a license as an embalmer and thus the regulations imposed on a lawful occupation are neither necessary nor appropriate.

These comments are not intended as undermining the occupation of funeral director. There is no denying that it is a highly responsible occupation calling for a high level of character, integrity and intelligence. The relationship between the funeral director and the relatives of the deceased is a delicate one calling for a person of judgment, sympathy, understanding and trustworthiness. The difficulty is that the prescribed training here bears no relation to the qualities which the occupation demands. It would be as illogical to require that a funeral director shall be a trained engineer. It is on this basis that the provision of the statute in issue must be held invalid.

■ The plaintiff's case is somewhat unique in that she wishes to take advantage of the separate statutory classifications of embalmer and funeral director. It is her desire to become a funeral director and not an embalmer. While the Board was within its authority in re-

quiring plaintiff to submit to examination, it acted unlawfully in requiring that the plaintiff show attendance at an approved college of mortuary science for one academic year. This requirement prevents the plaintiff from engaging in a lawful occupation and deprives her of her liberty and property without due process of law. Since this statute is repugnant to the Fourteenth Amendment of the Constitution of the United States and to Article II of Section Twenty-five of the Constitution of Colorado, it is unenforcible and void.

The judgment of the trial court, holding sec. 61-3-8 pertaining to completion of study at a college of mortuary science to be unconstitutional, is affirmed. To the extent that the judgment voids the remainder of section 61-3-8, it is reversed and remanded with directions to modify the judgment in conformity with the views expressed herein.