393 P.2d 268

Clarence H. McKINLEY, Petitioner,

v.

Chris A. REILLY, C. Stanley Clegg and Hugh Dugan, as members of the Arizona State Board of Funeral Directors and Embalmers, Respondents.

No. 8230.

Supreme Court of Arizona.

En Banc.

June 18, 1964.

Charles M. Brewer, Phoenix, for petitioner.

Robert W. Pickrell, Atty. Gen., Philip M. Haggerty, Asst. Atty. Gen., John Madden and John S. Schaper, Special Assts., Phoenix, for respondents.

STRUCKMEYER, Justice.

This action was commenced in this Court as an original petition for certiorari, article 6, section 5, Arizona Constitution, as amended 1960, A.R.S., and Rule 1 (a and b), Rules of Supreme Court, 17 A.R.S., to examine a decision of the Arizona State Board of Funeral Directors and Embalmers denying petitioner a license to act as a funeral director. Jurisdiction was accepted on the authority of Bennett v. Arizona State Board of Public Welfare, 95 Ariz. 170, 388 P.2d 166, and Findlay v. Board of Sup'rs of County of Mohave, 72 Ariz. 58, 230 P.2d 526, 24 A.L.R.2d 841.

Petitioner, Clarence H. McKinley, filed an application with the Arizona State

Board of Funeral Directors and Embalmers for a certificate of qualification as a funeral director on the form prescribed by the Board. The Board returned McKinley's application accompanied by a letter stating that the application was not in the form required by A.R.S. § 32–1331. That section requires the Board to investigate an applicant for a funeral director's certificate if the form submitted contains the information prescribed by A.R.S. § 32–1330.

A.R.S. § 32–1330 sets out qualifications for a funeral director, requiring that an applicant shall set forth that he:

> "A. 2. Has been, for not less than one year previous to the filing of his application, a qualified practicing embalmer associated with a qualified practicing funeral director."

In his application, petitioner stated that he was not a qualified embalmer. It is conceded that petitioner has been a funeral director for a period of twenty-five years elsewhere than in Arizona, including the State of California.

On December 2, 1963, petitioner applied for a writ of mandamus in the Superior Court of Maricopa County asking that the Board be directed to issue a funeral director's certificate and in the alternative for a declaratory judgment that A.R.S. §§ 32–1330 annd 32–1331 be found unconstitutional. The Superior Court of Maricopa County refused to issue the writ and further declared that A.R.S. §§ 32–1330 and 32–1331 were constitutional.

Petitioner here urges that A.R.S. §§ 32–1330 and 32–1331 deprive the petitioner of rights guaranteed to him under the Constitution of Arizona, article 2, section 4, and the Fourteenth Amendment to the United States Constitution, imposing an unreasonable requirement in that to be certificated as a funeral director one must be a licensed embalmer. It is petitioner's argument that the business of funeral directing is not so closely aligned with the business of embalming that a funeral director should be required to be an embalmer, that consequently it is an arbitrary exercise of police power for the Arizona legislature to require a funeral director to have the skill and knowledge of an embalmer.

■ It is well established that both undertaking and embalming are so affected with the public interest that they are subject to regulation and control by the State. In City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923, where, under the authority of its City Charter, Tucson passed an ordinance regulating the location of mortuaries, we said:

> "It is generally conceded that mortuaries, to use the modern term applied to undertaking and embalming establishments, are subject to reasonable police regulation * * * as to the manner in which they are con-

ducted." 34 Ariz. 499, 500, 272 P. 923, 924.

It is now undisputed that the undertaking and embalming business is one of a quasi public business closely related to health, welfare and public safety and is a business which, under the police power of the state, may be subject to regulation. See 89 A.L. R.2d 1338, annotation and cases cited, 1342–1343.

■ Some general principles of law need be emphasized. Every legislative act is presumed constitutional and every intendment is indulged in favor of an act's validity. Austin v. Campbell, 91 Ariz. 195, 370 P.2d 769. The police power of the State is the power vested in its legislature to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances either with penalties or without as shall be judged to be good for the welfare of the state and its residents. Sweet v. Rechel, 159 U.S. 380, 16 S.Ct. 43, 40 L.Ed. 188. Neither the Federal nor the Arizona Constitutions require that the legislature act in a manner less than in the public interest merely because an individual's right is affected by the passage of that particular statute.

In Edwards v. State Board of Barber Examiners, 72 Ariz. 108, 231 P.2d 450, we held that where an enactment bears any reasonable relationship to the end sought the courts may not substitute their judgment for the judgment of the legislature. We also said that the courts will acquiesce in the legislative determination of all matters of fact unless it is clearly erroneous, arbitrary and wholly unwarranted.

■ It is for the legislature to determine when a business or occupation, whether inherently or as the result of the manner in which it is conducted, is subject to restrictions. Courts are not concerned with the wisdom of legislative regulation, but examine only to determine if it runs contrary to constitutional guarantees or if it is otherwise arbitrary and unreasonable. We said in Francis v. Allen, 54 Ariz. 377, 96 P.2d 277, 126 A.L.R. 190:

"There is business which is entirely legitimate ordinarily, but it may become, because of the manner in which it is carried on, a cause of such evils, vices and dangers as affect the safety, health, comfort or welfare of the public. When it has this effect, it is subject to regulation, or even to prohibition, by the state under its police powers, and in determining when the necessity for such regulation or prohibition arises, it will be presumed that the legislature knows the manner in which the business is carried on and believes that the necessity for regulation has arisen." 54 Ariz. 381, 382, 96 P.2d 279.

A.R.S. § 32–1301 defines "embalmer," "funeral directing" and "funeral director" as:

> " 'Embalmer' means a person engaged in the art of disinfecting or preserving dead human bodies and preparing them for transportation."

> " 'Funeral directing' means the business or profession, for profit, of disposing of dead human bodies, or of maintaining a funeral establishment."

> " 'Funeral director' means a person engaged in funeral directing or in the management of a funeral establishment."

By A.R.S. § 32–1301, an embalmer is a person engaged in the art of disinfecting or preserving dead human bodies and preparing them for transportation. He is required, by A.R.S. § 32–1322, to be a graduate of a standard four-year high school course or its equivalent, be a graduate of a regular course of instruction in a college of embalming approved by the State Board of Funeral Directors and Embalmers, have two years practical training and instruction under a qualified practicing embalmer and have embalmed not less than fifty human bodies in the course thereof. The preparation for burial of the human remains involves proficiency in the fields of anatomy, chemistry, and bacteriology and the like.

The sciences of bacteriology and pathology and others allied with the prevention of the spread of infectious disease have advanced immeasurably during the past fifty years. Those who die from contagious and infectious disease may pass through the hands of an embalmer in preparation for disposal. A high degree of skill and knowledge in sanitation and hygiene must be possessed by an embalmer in order to prevent the transmission to or infection by others.

■ We take judicial notice that in the Great Plains area of the Western States and especially in Arizona the temperature during most of the year is such that dead bodies will rapidly decompose and disintegrate and that hence it is the common practice to embalm bodies in order to preserve them for services and later burial. The Arizona State Department of Health, by Rules and Regulations, Vital Statistics, Article 5, Part I, Regulation 3, recognizes the problem in forbidding the holding of any human body more than forty-eight hours after death unless it is embalmed or kept at a temperature below 32 degrees.

It is made a crime and unlawful by A.R.S. § 32–1368 for an embalmer, having knowledge of the fact sufficient to raise a suspicion of a crime related to the cause of death, to embalm a dead human body without permission of a coroner. The State here has imposed upon the embalmers an obligation to recognize and understand matters of

fact concerning causes of death and criminal responsibility therefor.

█ The legislature has decided that embalming is not a business which should be entered into without substantial preparation nor is it one in which the uninformed or ill-trained should engage. There is, accordingly, an obvious relationship to the public health, safety and welfare which justifies that the State, in the exercise of the police power, demand rigid requirements of training and education in the public interest. Trinka Services, Inc. v. State Board of Mortuary Science, 40 N.J.Super. 238, 122 A.2d 668.

By A.R.S. § 32–1321, those desiring to engage in the business of funeral directing must first procure from the State Board of Funeral Directors and Embalmers a certificate of qualification. A funeral director in Arizona is a person engaged in the management of a funeral establishment. The business of funeral directing is the business or profession of disposing of dead human bodies. A funeral director, therefore, is the person responsible for the supervision and operation of a business disposing of dead human bodies. A funeral establishment may be, in small communities particularly, a "one-man operation." There is no statutory requirement that funeral directors hire embalmers. Under such circumstances the legislature might have believed that the funeral director, in order to properly carry on the business, should know how to embalm bodies along with the other special knowledge applicable to conducting the final interment of a deceased. In this situation the combination of the qualifications of the embalmer and funeral director would appear to be indispensable for the satisfactory performance of the business of funeral directing.

█ A funeral director, as the manager of more than a one-man operation, has of course the power to hire and fire employees including licensed embalmers and with it the right and necessarily the duty to direct that their activities conform to the standards customarily required in the profession. The Rules and Regulations of the Arizona State Board of Funeral Directors and Embalmers recognize this responsibility. By Article 7, Section O, of these rules, funeral establishments must be kept and maintained in a clean and sanitary condition and all embalming tables, receptacles, instruments and other appliances must be thoroughly cleaned and disinfected immediately at the conclusion of each individual case. Other specific directions for sanitation are set forth in detail in Section O. While the obligation is imposed upon both funeral directors and embalmers, it is the management which has the ultimate responsibility.

Funeral directing partakes more of the characteristics of a profession than that of carrying on a commercial business activity. The public in dealing with funeral directors

must, because of the nature of the business, repose absolute confidence in them for it has neither the means nor skill by which to judge whether the funeral directors have completely fulfilled their part of the bargain. Hence the public meets the funeral director on an unequal basis and if he is not competent to properly direct the work of his employees the public will suffer accordingly.

 This ultimate responsibility of the funeral director demands that he determine whether the embalmer has performed his work properly. It is therefore reasonable that the funeral director be required to have the knowledge, qualifications and training of an embalmer. Accordingly, we are of the opinion that there is a reasonable basis which justifies the legislature in requiring that a funeral director have not less than one year's experience as a qualified practicing embalmer associated with a qualified practicing funeral director.

We recognize that there is authority holding contrary to the position we have taken here. Of these, two recent cases, because of the similarity of statutes, deserve comment. In Gholson v. Engle, 9 Ill.2d 454, 138 N.E.2d 508, the court stated:

"The record does not, in our opinion, establish that the public health considerations justify the requirement that a funeral director be a licensed embalmer. The funeral director is concerned primarily with the amenities of the funeral service." 9 Ill.2d 460, 138 N.E.2d 512.

We think that the statute A.R.S. § 32–1330 is designed to compel the funeral director to be more concerned with the proper preparation of the human body for disposal and less concerned with the amenities of the funeral service. In Cleere v. Bullock, 146 Colo. 284, 361 P.2d 616, the court stated:

"It would appear that the only justification for requiring that a funeral director have all the qualifications of the embalmer is that he will be technically qualified to supervise the work of the embalmer. However, it is not shown that such supervision is appropriate or necessary." 146 Colo. 291, 361 P.2d 619.

In this we disagree with the Colorado court, being of the opinion that the legislature could believe that such supervision is appropriate and necessary.

We recognize that all may not agree that supervision and responsibility for the embalmer's acts are necessary for the proper discharge of a funeral director's duties. However, we are of the opinion that the principles of law applicable here compel us to hold the statute constitutional. It is the duty of the Court to uphold statutes rather than defeat them and to avoid making statutes invalid if possible. Maricopa County v. Douglas, 69 Ariz. 35, 208 P.2d 646; Peterson v. Sundt, 67 Ariz. 312, 195

P.2d 158; Coggins v. Ely, 23 Ariz. 155, 202 P. 391; Hicks v. Krigbaum, 13 Ariz. 237, 108 P. 482. We do not concern ourselves with the wisdom of the legislative act but only whether there is any reasonable relationship between the statute and the end sought to be obtained. Edwards v. State Board of Barber Examiners, supra. In the instant case, the end sought to be attained is apparent. We cannot say that the relationship of the statute to that end is without reason. We agree in the conclusion reached by the Supreme Court of Florida in State Board of Funeral Directors, etc., v. Cooksey, 147 Fla. 337, 3 So.2d 502, modified on other grounds and rehearing denied 147 Fla. 788, 3 So.2d 508, adhered to on rehearing, 148 Fla. 271, 4 So.2d 253, wherein an identical requirement for funeral directors was held constitutional.

Petitioner argues that the unconstitutionality of subsection 2 of A.R.S. § 32–1330 is "exemplified by the ludicrous provision [A.R.S. § 32–1337] exempting spouses and legal representatives from obtaining embalmers' licenses in order to become funeral directors." A.R.S. § 32–1337 provides that when a qualified funeral director dies leaving an established business the surviving spouse may make application for examination as funeral director and the requirement with respect to prior experience as a qualified practicing embalmer shall be waived. A.R.S. § 32–1337 also provides that where there is no surviving spouse a special permit may be issued to the legal representative of the estate to carry on the business for a period not to exceed nine months so as to afford opportunity for termination, transfer or disposition of the business.

We first observe the general rule that only those who are injured by the unconstitutional provision of a statute may raise an objection as to its constitutionality. Town of South Tucson v. Board of Supervisors, 52 Ariz. 575, 84 P.2d 581. Assuming, but not deciding, that the exceptions carved out of A.R.S. § 32–1330 by § 32–1337 are arbitrary and without a reasonable basis, the favoritism on behalf of the widows and estates of deceased funeral directors would not be grounds for petitioner to attack the constitutionality of A.R.S. § 32–1330. Hence we do not reach the constitutionality of A.R.S. § 32–1337.

Petitioner argues, in effect, that the exceptions are a proof that the legislature did not consider the qualifications of an embalmer as necessary for a funeral director. We think that petitioner's conclusion does not necessarily follow. The legislature could have been of the view that the qualifications of an embalmer were desirable for a funeral director but in weighing the economic hardship which could occur decided that the public interest was better served by creating the exceptions stated in A.R.S. § 32–1337.

Decision of Arizona State Board of Funeral Directors and Embalmers is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and BERNSTEIN and JENNINGS, JJ., concur.