MR. JUSTICE GROVES
delivered the opinion of the Court.
Mrs. Rich, the plaintiff, applied to the Colorado Board of Mortuary Science for a “Funeral Director’s License.” After *344 hearing by that Board, it made the following decision:
“That the application of Helen I. Rich for examination for licen-sure as a mortuary science practitioner be hereby denied for the reason that such applicant fails to meet the necessary statutory prerequisites as to education as required by statute.”
Mrs. Rich brought action in the District Court of Baca County against the members of that Board (hereafter referred to collectively as the Board), praying among other things that the statute under which the Board acted, being the Mortuary Science Code of 1967 (1967 Perm. Supp., C.R.S. 1963, 61-4-1 et seq.[1]), be declared unconstitutional. The court denied the Board’s motion for change of venue to the City and County of Denver and the Board then filed a notice of appeal. Shortly thereafter the parties stipulated that the Board withdraw its appeal but without waiving “any right to raise the issue of venue should the matter again be appealed after a judicial determination of the issues in the trial court level . . . .” The stipulation contained a further provision that Mrs. Rich might continue to perform the duties which she had been performing at her funeral home “pending a final judicial determination of the matter or the issues contained in the complaint.” The court then proceeded with the matter and declared the Act unconstitutional and directed the Board to permit Mrs. Rich “to take the examination for a Funeral Director License.” We reverse the decree.
We relate some of the statutory history on mortuaries as a preface to an exposition of the facts in this case. In 1913 the General Assembly adopted an act which provided for the licensing of embalmers, Colo. Sess. Laws 1913, ch. 80, at 268.[2] This Act was repealed by Colo. Sess. Laws 1939, ch. 105, at 367, which provided for the licensing “of the business and profession of funeral director and embalmer. ’ ’ Standards were provided for a funeral director, which related principally to the maintenance of a fixed place of business and to keeping these premises in a sanitary condition. It provided that a funeral director should have *345 “made a study of the art of funeral directing for at least six (6) months, and possess the equivalent of a high school education.”
The Act stated that all embalming in the conduct of a funeral director’s business should be only by duly licensed embalmers. In order to be licensed as an embalmer a person had to be over the age of 21 years, be of good moral character, and pass an examination. The law further provided:
“Applicants for an embalmers’ license must have not less than nine (9) months training in an approved or accredited school of mortuary science, and prior credits of not less than four (4) years high school education, and two years training as an apprentice embalmer, under an embalmer duly licensed in this state, or embalming in compliance with the law of the state where such embalmer is in business, said apprenticeship to consist of at least five (5) hours per day, five (5) days per week. Such applicant shall establish to the satisfaction of the board that he has assisted in embalming not less than twenty-five (25) human bodies.” Any person over 16 years of age “holding a high school certificate,” after examination, might be licensed as an embalmer’s apprentice.
The 1939 Act was repealed in 1957 when “The Funeral Directors and Embalmer’s Code of 1957” was adopted. Colo. Sess. Laws 1957, ch. 150 at 383. This statute continued the separate licensing of funeral directors, embalmers and embalmers’ apprentices. It increased the educational standards required before a person could apply to be licensed as an embalmer. It prescribed the following qualifications for funeral directors:
“In order to qualify for state board examination for a license as funeral director, the applicant shall be a resident of the state of Colorado and shall be over twenty-one years of age, of good moral character and must have at least one academic year’s course in an approved or accredited school or college of mortuary science, and prior academic college credits in an approved accredited college showing the completion of at least sixty-four semester hours or ninety quarter hours of curriculum. The applicant,In addition to the qualifications and educational requirements specified above, must have served at least one year as an apprentice under a duly licensed funeral director in a regularly estab *346 lished funeral service established in the state of Colorado and shall have assisted during the year of apprenticeship in conducting at least twenty-five funeral services.
“The course of study for the sixty-four semester hours, or ninety quarter hours, pre-mortuary liberal arts college course shall be prescribed by the board.”
In Cleere v. Bullock, 146 Colo. 284, 361 P.2d 616 (1961), this court held the requirement that funeral directors complete a course of study at a college of mortuary science was unconstitutional for the reason that it is an unnecessary and arbitrary exercise of police power to require a funeral director to have the qualifications of an embalmer. We will further discuss Bullock later in this opinion.
In 1967 the General Assembly repealed the Funeral Directors and Embalmers Code of 1957 and effective as of July 1, 1967 enacted the “Mortuary Science Code of 1967,” mentioned and cited in the second paragraph of this opinion. This did away with the distinction between funeral directors and embalmers and provided that there should be a person engaged in the practice of funeral directing and embalming who shall be a “licensed practitioner” under a valid license of the Colorado Board of Mortuary Science. Among the qualifications prescribed for a licensed practitioner are the following:
“[That the person] must be a graduate of a college of mortuary science, approved and accredited by the board, with prior academic college credits in an approved accredited college showing the completion of at least sixty semester hours or ninety quarter hours of curriculum. A three-year course in mortuary science in a college or university approved and accredited academically shall be considered the same as the two years of academic college and graduation from a mortuary college. In addition to the above educational requirements, the applicant must have served at least one year as a mortuary science trainee in Colorado, under at least one licensed practitioner, and shall have assisted in embalming at least twenty-five bodies and in conducting at least twenty-five funerals.”
The statute contains a “grandfather” clause to the effect that those licensed as funeral directors or embalmers on December *347 31, 1967, may continue to renew their respective licenses annually.
FACTS
The Rich Mortuary at Springfield, Baca County, Colorado, came into existence in 1935. Prior and subsequent to 1950 it was owned and operated by Bob W. Rich and his mother. Mr. Rich was licensed both as a funeral director and embalmer. In 1950 Mr. Rich married Helen I. Rich, the plaintiff here, and she commenced working at the funeral home. Mr. Rich’s mother moved to Kansas City in 1952 and thereafter Mr. and Mrs. Rich (i.e Mr. Rich and the plaintiff) operated the funeral home. Mr. Rich’s mother retained her interest in the mortuary until 1965 when it was purchased by Mr. and Mrs. Rich. They continued to operate it under the licenses issued to Mr. Rich until he died of a heart attack on October 13, 1967. Mrs. Rich succeeded to the entire ownership of the establishment.
Prior to the death of her husband, Mrs. Rich actively assisted him in all phases of the mortuary business. Except that after his death she obtained a trainee license from the Board, she has never been issued any other kind of license relating to mortuaries. Following his death she continued to operate the funeral business, having a contract with a mortuary in Lamar, Colorado, whose licensed practitioners handled all embalming. Also, one of these licensed practitioners was present at each funeral service held at the Rich Funeral Home. This person had few, if any, duties, but it was thought that his presence would add to statutory compliance.
Mrs. Rich has a high school diploma, but she has not attended any mortuary school nor any college of any type. Her application mentioned in the first sentence of this opinion was dated May 26, 1971 and the hearing thereon by the Board commenced on July 12, 1971. Since 1950 Mrs. Rich participated or assisted in 1200 to 1500 funerals. Between the time of Mr. Rich’s death and the commencement of the hearing Mrs. Rich had conducted over 200 funerals in the Rich Funeral Home.
As already mentioned, the denial of licensure by the Board was predicated upon her lack of the educational requirements under the statute.
*348 VENUE
We believe we should comment on the subject of venue, albeit our comments are obiter dicta. There is some lack of explicitness as to the reasons for the denial of the motion for change of venue. The court’s order reads:
“THE COURT FINDS AND ORDERS that there is no legal basis for a change of venue under the facts therefore Defendants’ Motion for a Change of Venue is hereby denied.”
Counsel for Mrs. Rich takes the position that her right to a license is a property right and, therefore, under C.R.C.P. 98(a) Baca County is the proper county. The cases cited in support of the proposition either are not in point or involve specific tangible property.
In contrast, without so holding, it seems to us that venue is governed by that portion of the Colorado Administrative Procedure Act which reads as follows:
“Any party adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court in accordance with the rules of civil procedure within sixty days after such agency action becomes effective. A proceeding for such review may be brought against the agency by its official title, individuals who comprise the agency, or any person representing the agency or acting on its behalf in the matter sought to be reviewed. The complaint shall state the facts upon which the plaintiff bases the claim that he has been adversely affected or aggrieved, the reasons entitling him to relief, and the relief which he seeks. Every party in the agency action not appearing as plaintiff in such action for judicial review shall be made a defendant. Thereafter service of process, responsive pleadings, and other matters of procedure shall be controlled by the rules of civil procedure. The residence of a state agency for the purposes of this subsection (4) shall be deemed to be the city and county of Denver.” Section 24-4-106(4), C.R.S. 1973.
If so, under C.R.C.P. 98, it would seem that the venue should have been changed to Denver. However, since the parties stipulated that the case should be tried in Baca County, we feel no discomfort in declining to rule on the venue point, thus enabling the District Court of Baca County to complete the proceedings in the case.
*349 CONSTITUTIONALITY
A.
Since the commencement of these proceedings, counsel for Mrs. Rich has constantly drummed to the district court and to us the case of Cleere v. Bullock, 146 Colo. 284, 361 P.2d 616 (1961), mentioned earlier. We find only one reference to it by the Attorney General, counsel for the Board. That was a passing mention in a brief to the district court in which it was stated that the case was inapplicable.
Mr. and Mrs. Bullock were co-owners of the Bullock Mortuary in Englewood for a number of years. He was a licensed funeral director and a licensed embalmer, and she had never been licensed in either capacity. Throughout their ownership of the mortuary she handled the management and supervision of the business in his absence. She sought a funeral director’s license under the Funeral Director’s and Embalmer’s Code of 1957, and was denied a license because she had not attended a school of mortuary science for one year as required by that statute. Bullock held that this requirement of the statute was unconstitutional for the reason that it was an arbitrary exercise of the police power to require a funeral director to have the skill and knowledge of an embalmer. “This requirement prevents the plaintiff from engaging in a lawful occupation and deprives her of her liberty and property without due process of law.”
Earlier in the Bullock opinion it was stated:
“There was conflict among the expert witnesses as to (1) whether a funeral director ever had to determine if a corpse was infected with a contagious disease, (2) whether a funeral director ever had to determine if a person were, in fact, dead, (3) whether a funeral director ever had to determine if a person had died a felonious death, (4) whether a living person ever contracted a contagious disease from a corpse, and (5) whether it was necessary or desirable that a funeral director have the technical knowledge and training that he would acquire by attending a school of mortuary science for one year as required by the statute.
“The testimony indisputably shows that while it is desirable that a funeral director have some knowledge of embalming, he would never be called upon to actually embalm a body. A licensed embalmer would be called to perform this function. A funeral *350 director is expected to manage the mortuary and also to supervise the work of the embalmer. Most of the work of the funeral director has to do with mortuary admnistration. He is mainly concerned with the various details of a funeral other than embalming.”
* * * *
“From the facts adduced at the trial, it would appear that while it is desirable for a funeral director to have knowledge of embalming and related problems such as recognition of disease and recognition of death occasioned by an unlawful act, such knowledge is in no sense necessary to the performance of the work of the funeral director.”
As previously mentioned, the Mortuary Science Code of 1967 eliminated for licensure the classifications of funeral director and embalmer, and instead provided for a “licensed practitioner.” The declaration of policy contained in that act reads as follows: “The provisions of this article and regulations, authorized pursuant to this article are enacted to prevent the spread of infectious and contagious diseases, to establish sanitary and safe mortuary science practices, and this article is enacted under the police powers of this state for the purpose of protecting the health, safety, and general welfare of the people of this state.”
We find practically identical purposes stated in the Funeral Directors and Embalmers Code of 1957. If the 1967 Act retained the classifications of funeral director and embalmer and made the qualifications of each substantially identical, we would have before us the formidable question of determining whether Bullock should be overruled because the General Assembly is the best judge of whether the enactment was unreasonable and arbitrary in its attempt to promote the general welfare.
Fortunately, we do not have this situation. In 1967 the General Assembly concluded that the general welfare would better be promoted by the abolition of the distinction between funeral directors and embalmers. The General Assembly, with its power and practice of investigation and the holding of hearings, has determined that knowledge of the embalming science is necessary on the part of a funeral director in order to prevent the spread of infectious and contagious diseases and to establish sanitary and *351 safe mortuary science practices. It cannot be denied that this comes under the category- of the police power.
In order for Mrs. Rich to obtain from us a declaration of unconstitutionality under the theory of Bullock, she must sustain her burden of proof in showing facts establishing rather conclusively that this legislative purpose is unnecessary, unreasonable and arbitrary. This she has failed to do. Her main arguments in this respect are the words of Bullock, that she has demonstrated that she can be a good funeral director, and what was good enough in times past is good enough for the future. This does not prove her case nor does it carry her burden of clearly demonstrating the unconstitutionality of the Act. Dunbar v. Hoffman, 171 Colo. 481, 468 P.2d 742 (1970); Love v. Bell, 171 Colo. 27, 465 P.2d 118 (1970); Consumers League v. Colorado and Southern R. R. Company, 53 Colo. 54, 125 P. 577 (1912).
We may depart somewhat from the philosophy of Bullock, but it and this case are distinguishable because (except for grandfathering) there no longer is such a classification of funeral director.
B.
The trial court further found the Act unconstitutionally discriminatory. It stated: “. . . licensees from other states which do not have such requirements may obtain a Colorado license through reciprocity without meeting the educational requirements.”
The Act reads:
“The board, subject to the provisions of this article and rules of the board promulgated thereunder, prescribing the qualifications for a license to practice mortuary science, may recognize, after examination by this board, a license to practice mortuary science issued by the proper authorities of any other state or political subdivision of the United States, or province of Canada, upon submission of evidence satisfactory to the board that such other state or political subdivision of the United States or province of Canada maintains a system and standard of qualifications and examination for a license to practice mortuary science which is the equivalent to those required by this state, and may issue such license to practice mortuary science in Colorado, but said appli *352 cant for reciprocal license shall prove to the members of the Colorado board that he is familiar with the laws, rules and regulations governing such licenses in Colorado.” 1967 Perm. Supp., C.R.S. 1963, 61-4-14.[3]
Counsel for Mrs. Rich state in their brief:
“[A] person, who has obtained a license in a foreign state at a period of time when the college requirement was absent from the statute in the foreign licensing state, can obtain a Funeral Director’s license or an Embalmer’s license in Colorado even though he still does not have the required two years of college credits.” In his brief the Attorney General says:
“[A] person holding a funeral director’s license or an embalmer’s license from another state who has held such license prior to 1967 and who’s [sic] state has a [sic] equal to or greater than law of that law of the State of Colorado prior to 1967 would also be granted a separate license on reciprocity.”
We will assume arguendo that it permits licenses to be issued as stated by the Attorney General in the above quotation. Counsel for Mrs. Rich has not cited any authority to show that reciprocity is unconstitutional if the same requirements are applied as are applicable to those who are “grandfathered” under the 1967 Act. Not having been shown authority under which this should be declared an unconstitutional discrimination, we decline so to hold.
Counsel for Mrs. Rich urges upon us his question to a former member of the Board and the answer thereto:
“Q [I]f [an applicant for a license] had a license [in another state] and regardless of what the qualifications were at the time he obtained the license, if that state has qualifications similar to ours and his license appeared valid on its face, you would by reciprocity give him a Colorado license?
“A [After oral] examination.”
Apparently he based his quoted answer upon two instances. The testimony of this witness read as a whole is to a certain extent contradictory and leaves one wondering just what the policy of the Board was concerning reciprocity. In any event, granting a license under this situation described in the quoted question is not *353 authorized by the statute. If the Board is so licensing persons, appropriate action can be taken with regard thereto. However, we fail to see that this justifies the granting of a license to Mrs. Rich in violation of the terms of the statute.
We find the other arguments by Mrs. Rich’s counsel to be without merit.
For those who may wonder, we add that the Act continues to contain an exception whereby the members and followers of any religious sect may continue to care for, prepare and bury the bodies of deceased members of the sect in accordance with the customary rites of that sect in the burial of their dead.
Judgment reversed and cause remanded with directions to dismiss the complaint.
MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY and MR. JUSTICE ERICKSON concur in the result.

Now sections 12-54-101 et seq., C.R.S. 1973.

We have not attempted to ascertain what, if any, acts relating to morticians may have been in existence prior to 1913. The 1913 Act repealed all acts or parts of acts in conflict therewith.

Now Section 12-54-114, C.R.S. 1973.