BERCH, Vice Chief Justice,
dissenting.
¶ 33 I respectfully dissent. I disagree with my colleagues’ interpretation of the word “indicted” as meaning under pending indictment and would hold instead, as the court of appeals concluded, that A.R.S. § 13-901.01(B) means what it says: that one convicted of drug possession who has previously been indicted for a crime of violence is not automatically eligible for the benefit of probation. See State v. Gomez, 209 Ariz. 373, 376, ¶ 10, 102 P.3d 992, 995 (App.2004).
¶ 34 The legislature has the power to set the sentencing ranges for crimes. See State v. Wagstaff, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990). Unless the sentences provided are unconstitutional, courts should defer to the legislative determinations. McKinley v. Reilly, 96 Ariz. 176, 179, 393 P.2d 268, 270 (1964) (stating that “[e]ourts are not concerned with the wisdom of legislative regulation, but examine only to determine if it runs contrary to constitutional guarantees”).
¶ 35 In construing statutes, we apply them plain language unless doing so would lead to an absurd, illegal, or unconstitutional result. Bilke v. State, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003); see also Calik v. Kong-able, 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055, 1057 (1999) (interpreting Proposition 200 and applying rules of statutory construction to interpretation of a statute resulting from an initiative). Here, the people, acting in their legislative capacity, approved a proposition that uses the term “indicted,” unmodified and in the simple past tense. Its clear meaning is that anyone who has been indicted for a violent offense, whenever in the past that might have occurred, is excluded from mandatory probation under A.R.S. § 13-901.01. See State v. Benak, 199 Ariz. 333, 334, ¶ 6, 18 P.3d 127, 128 (App.2001) (noting that a person is eligible for probation only “if the person has not previously been indicted for ... a violent crime”). Such an interpretation comports with common usage and understanding and furthers the goal of denying the benefit of mandatory probation to those who might be violent persons.
¶36 This interpretation is not irrational, nor does it lead to absurd or arbitrary results. See Heller v. Doe ex rel. Doe, 509 U.S. 312, 319-21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (explaining rational basis test); Ariz. Downs v. Ariz. Horsemen’s Found., 130 Ariz. 550, 556, 637 P.2d 1053, 1059 (1981) (same). An indictment issues only after a grand jury has found probable cause to believe that a defendant has committed the crime charged. A.R.S. § 21-413 (2002). The allegations contained in the indictment have thus been subjected to some testing before neutral arbiters, and the issuance of the indictment demonstrates probable cause to believe that the defendant might be a violent offender. A rational relationship therefore exists between the public’s decision to deny the automatic imposition of proba *62 tion to violent offenders and the court’s initial determination that a defendant who has been indicted for a violent crime may be such a person. See Lewis v. United States, 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (requiring relationship between the statutory provision and the purpose to be served).
¶37 Moreover, using an indictment for a violent crime as an indicator that a defendant may be a violent person who is ineligible for automatic imposition of probation provides a bright-line, easy-to-apply rule for separating those immediately eligible for probation under A.R.S. § 13-901.01(A) from those who are not. Gomez claims that precluding her from eligibility for mandatory probation based solely on the existence of an indictment for a prior violent crime violates due process. But this is not how the statute operates. Section 13-901.01(B) does not prohibit the imposition of probation for those who have previously been indicted for a violent crime. Rather it creates a screening mechanism by which those who have been convicted of or indicted for a prior violent offense, and therefore do not automatically qualify for mandatory probation under § 13-901.01(A), may establish their eligibility for probation through a different statutory process. Section 13-901.01(B) requires a previously indicted defendant to “be sentenced pursuant to the other provisions of chapter 34 of this title.” Those provisions allow terms of probation for defendants convicted of the drug crimes with which Gomez was charged, if other conditions are satisfied. See A.R.S. §§ 13-902(A)(3) & (4) (2001), - 3405(C) (2001), -3407(C) (2001) (allowing terms of probation for class 4 and 6 drug felonies). At a later hearing, the defendant may contest the existence of the indictment or the factual basis underlying it. Such a procedure, triggered by the fact of indictment for a violent crime, does not violate due process.
¶ 38 The majority posits the arbitrariness of excluding from mandatory probation those who were indicted for violent crimes, but not those who were charged by information. At first glance, the distinction gives pause. But three factors militate in favor of nonetheless deferring to the statutory language: First, the Defendant did not pursue an equal protection claim below, although, as the majority opinion notes, she finally did so in her reply brief. Op. ¶ 9 n. 1. Second, it is well established that a classification may be under-inclusive or not perfectly drawn, yet still survive a rational basis challenge.[6] See Big D Constr. Corp. v. Court of Appeals, 163 Ariz. 560, 566, 789 P.2d 1061, 1067 (1990) (noting that “[a] perfect fit is not required; a statute that has a rational basis will not be overturned ‘merely because it is not made with ‘mathematical nicety, or because in practice it results in some inequality’ ’ ”) (citations omitted). Third, in attempting to find a rational basis, we may consider any facts that might support the statutory classification, such as, for example, any tendency by prosecutorial agencies to proceed by indictment rather than information in eases involving violent crimes. See Ariz. Downs, 130 Ariz. at 556, 637 P.2d at 1059 (concluding that court will uphold constitutionality of a statute under a rational basis test if it can “perceive any set of facts which rationally justif[ies] it”). This perceived basis alone provides a rational basis for the distinction between cases that proceed by indictment versus information. The desire to screen for potentially violent persons also supports the classification.
¶ 39 The majority also concludes that the use of an old or, as in this ease, dismissed *63 indictment leads to arbitrary or unfair results. Op. ¶ 27. That might be the case if determining the existence of the indictment were the end of the inquiry. But under the statutory scheme at issue, the defendant retains the right to make her case that the indictment is too remote to be probative of her current propensity for violence or was dismissed because the State could not prove its case. That is, the defendant retains the right to establish that, despite her prior indictment for a violent offense, she nonetheless poses no danger to the public and should therefore be placed on probation. This scheme also permits the State to attempt to show reasons other than a defendant’s innocence that may have resulted in the dismissal of the indictment, such as loss of evidence, absent or recalcitrant witnesses, or too much time elapsed. In this ease, although the State conceded that it could not prove its case, we do not know why that is so. The existing statutory provisions provide a mechanism for the court to inquire into these matters.[7]
¶ 40 The majority also concludes that the statute arbitrarily permits the State to rely on an indictment that has been dismissed, but not to rely on a conviction that has been reversed or vacated. Op. ¶¶ 16-18. In the latter case, however, there has been a judicial determination that the conviction resulted from a process infected with legal error. Once a conviction has been judicially reversed or vacated, it no longer exists for purposes of sentence enhancement. State v. Kiser, 111 Ariz. 316, 317, 529 P.2d 215, 216 (1974). The dismissal of an indictment, however, is usually done at the request of the prosecution, often for reasons unrelated to the defendant’s guilt or innocence. Such a dismissal does not erase the fact that a grand jury has found probable cause, and it does not make the indictment cease to exist in the way that a judicial reversal does for a conviction. The interposition of a judicial determination provides a rational, non-arbitrary distinction between dismissed indictments and reversed or vacated convictions.[8]
¶41 Ironically, the majority’s interpretation leads to the same result for those defendants under pending indictment for violent crimes that it condemns for those whose indictments were dismissed. Those defendants under pending indictments, whose rights similarly have not been adjudicated, are also excluded from automatic eligibility for mandatory probation.
¶ 42 In sum, A.R.S. § 13-901.01(B) simply permits conviction or indictment for a violent crime to serve as an alarm that signals the parties and the court that this defendant’s record should be carefully examined to determine whether the defendant is a violent offender who should not be placed on probation. The alert served its purpose in this case. Because Gomez had been indicted for a violent, gun-related crime in her past, the court conducted an inquiry into her suitability for probation. See A.R.S. § 13-604.04(B) (2001) (crime of violence involving use of deadly weapon). It came to light that she was not eligible for probation under the reg *64 ular sentencing provisions because she committed her drug offense while on parole for another crime. See A.R.S. §§ 13-3407(0), - 604.02(B). The statutory scheme performed its function of allowing additional inquiry.[9]
¶ 43 In short, the present scheme, if interpreted according to its plain language, is not irrational or arbitrary, nor does it lead to absurd results. I would therefore interpret A.R.S. § 13-901.01(B) according to its terms and not insert terms such as extant or pending that the people did not include when they adopted Proposition 200.[10]
CONCURRING: RUTH V. McGREGOR, Chief Justice.

. The applicable standard by which to review Gomez's eligibility for probation is the rational basis test. Because probation is a matter of legislative grace, State v. Smith, 112 Ariz. 416, 419, 542 P.2d 1115, 1118 (1975), eligibility for it is not a fundamental right. Therefore the rational basis test applies. See Kenyon v. Hammer, 142 Ariz. 69, 78-79, 688 P.2d 961, 970-71 (1984) (discussing equal protection tests); Ariz. Downs, 130 Ariz. at 555, 637 P.2d at 1058. That test requires that we affirm the classification unless it is "patently arbitrary’' or "utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); see State v. Poshka, 210 Ariz. 218, 222, ¶ 13, 109 P.3d 113, 117 (App.2005); see also Martin v. Reinstein, 195 Ariz. 293, 313-14, ¶ 66, 987 P.2d 779, 799-800 (App.1999) (citing Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)) (due process "arbitrariness" standard).

. The majority opinion states that the Defendant is given no "opportunity ... to explain or the court to consider the circumstances of the dismissed charges,” Op. ¶ 22, and no "opportunity ... to contest the factual basis for the indictment." Op. ¶ 28. See A.R.S. § 13-901.01(B). We read the statute differently, as providing a defendant who is otherwise eligible for discretionary probation under the general drug sentencing laws to contest the factual basis for the indictment and to contend that a previously dismissed indictment should not prevent her from being placed on probation. That Gomez is precluded from eligibility for probation because she was on parole for another crime when she committed the drug offenses at issue here does not affect the way the statute works for all offenders. It simply renders this defendant ineligible for probation.

. That courts have determined that a vacated conviction no longer is a "conviction” for purposes of sentence enhancement should not alter the analysis of this exclusion from entitlement to suspension of sentence for those indicted for violent crimes. The United States Supreme Court has called the exclusion of vacated or reversed convictions from the common understanding of the term "convicted” "an obvious exception to the literal language of the statute.” Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 115, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). There is no compelling reason that such an "exception to the literal language” must also apply to indictments for violent crimes, given the public’s desire to deny the benefits of mandatory probation to those who might be violent offenders.

. Consideration of prior indictments in the criminal sentencing context is not unknown. Once one Blakely-compliant aggravating factor has been proved, for example, previous indictments may be used to aggravate a sentence. See State v. Martinez, 210 Ariz. 578, 585, ¶ 26, 115 P.3d 618, 625 (2005) (holding that judge may consider additional aggravating factors once one Blakely - compliant factor has been established); see also State v. Johnson, 183 Ariz. 623, 635-36, 905 P.2d 1002, 1014-15 (App.1995) (holding that trial court properly aggravated sentence based on grand jury's probable cause determination resulting in an indictment), aff d on other grounds, 186 Ariz. 329, 922 P.2d 294 (1996); State v. Rebollosa, 177 Ariz. 399, 401, 868 P.2d 982, 984 (App. 1993) (to same effect).

. Because of the majority's disposition, we need not reach the constitutional issue decided by the court of appeals.