240 P.2d 1198

**MYERSON et al. v. SAKRISON et al.**

No. 5365.

Supreme Court of Arizona.

Feb. 26, 1952.

Rehearing Denied March 18, 1952.

James Elliott Dunseath, of Tucson; Snell & Wilmer, and Edward Jacobson, of Phoenix, for appellants.

D. Kelly Turner, of Phoenix, for appellee.

H. S. McCluskey, of Phoenix, amicus curiae.

BLAKE, Superior Court Judge.

This is an action involving the priority of a lien, authorized by the Employment Security Act of Arizona, on the real property of a delinquent employer as against a prior recorded realty mortgage of a third person. This appeal comes to this court on an agreed statement of facts, pursuant to Section 21–1830, A.C.A.1939.

Hector C. Amado, the maker of a note and mortgage being in default, action was brought in the Superior Court of Pima County by the assignees (appellants) to secure judgment on the note and foreclose the mortgage. The Employment Security Commission was joined as a party defendant. The court first held that the appellants' realty mortgage was superior to the commission's lien but a new trial was granted and the court held that by the provisions of Section 56–1014h, A.C.A.1939, as amended, the commission's lien was prior and superior to the mortgage.

This appeal is taken from that portion of the judgment only, which found the commission's lien prior in right and superior to the mortgage lien of the appellants.

The following is a brief statement of the facts:

Hector C. Amado was an employer within the terms of the Employment Security Act, and was in default for contributions for the quarters ending September 30th and December 31st, 1946, and March 31st and June 30th, 1947.

On the 6th day of October, 1947, the commission recorded a notice of lien for the amount of the delinquent contribution, in the sum of $263.95, setting forth that a lien was claimed on all the property of Amado and particularly the real estate described as lot 7, block 5, University Home Addition, Tucson, Arizona, and setting forth that the lien claimed, dated from the 15th day of August, 1946.

On the 12th day of September, 1947, Amado and his wife, Frances G. Amado, executed and delivered their promissory note in the amount of $2500 to Standard Realty Company, secured by a realty mortgage on the above lot which was recorded on the 19th day of September, 1947. On the 31st day of October, 1947, Standard Realty Company assigned the note and mortgage to the appellants herein. It will be noted that the realty mortgage lien was recorded sixteen days prior to the recording of the commission's lien.

The agreed statement of facts discloses that at the time of recordation of the mortgage on September 19, 1947, a search of the records in the recorder's office disclosed that there was no lien of any kind or character of record on said property at

that time. It is further disclosed that at the time of the recording of the realty mortgage there was nothing to put any purchaser on notice that there was a lien of any kind against it, and it is admitted that the assignor had no actual knowledge, or notice from any source whatsoever, of a lien of any kind.

Appellants make the following assignment of error: "The court erred in ordering judgment in favor of the appellees and against appellants and in finding thereby that an Employment Security Commission lien is superior to a prior recorded mortgage validly taken by persons other than the delinquent employer, for the reason that such interpretation of the Employment Security Act, (and particularly of Sections 56–1014g and 56–1014h A.C.A.1939, as amended) makes such Commission lien violative of the due process guarantees of both the Constitution of Arizona and the Constitution of the United States."

And as a supporting proposition of law, submit: "A statute providing for Employment Security Commission liens superior to a prior recorded valid contract lien of other than the delinquent employer, is unconstitutional as offending the due process requirements of the State and Federal Constitutions unless reasonable notice that such preferences might exist or be created is given, or the circumstances are such that a reasonable person is put on notice that such liens might exist or be created."

It is important to note that the first installment or portion of these unpaid contributions become due and owing a full year and six days prior to the commission's filing of notice of lien. It is further important to note that the commission claimed the lien dated from August 15, 1946, being nearly a year and two months prior to the filing of its notice thereof.

The statutory provisions are as follows:

Section 56–1014g, A.C.A.1939, as amended, "Lien for contributions.—Separate and apart from and in addition to the other provisions of article 10, chapter 56, Arizona Code of 1939, contributions, interest and penalties due under article 10, chapter 56, Arizona Code of 1939, shall be a lien, prior and superior to all other liens except taxes, prior recorded realty mortgages and unpaid wage claims, *not only against the interests of any employer, but against the interests of all others, in the real estate, plant, works, equipment and buildings, improved, operated and constructed by any employer, and also upon any products or articles manufactured by such employer."* (Emphasis supplied.)

Section 56–1014h, supra, "Effect of lien. —*The lien created by this act shall attach from the date of the commencement of the labor for which the contributions, interest and penalties are due.* In order to avail itself of the lien hereby created, the commission shall, *within three (3) months after such employer shall have delivered to the commission all reports required by* it and

shall have become delinquent in the payment of contributions due thereon, file with the county recorder of the county within which such property then be situate, a statement in writing describing in general terms the property upon which a lien is claimed and stating the amount claimed, after deducting credits and offsets, and that the same is delinquent. The county recorder shall record every claim of lien filed pursuant to this section in a lien docket kept for that purpose, which record shall be indexed as deeds and other instruments. *If any employer shall fail, delay or refuse to file with the commission all reports required by it, the lien hereby created shall continue in full force and effect although the amount thereof be undetermined and the three (3) months' time within which the commission shall file its claim of lien shall not begin to run until the actual receipt by the commission of all such reports.* From and after the filing of such claim of lien, the commission shall be entitled to commence suit to foreclose such lien in the manner provided by law for the foreclosure of other liens on personal or real property." (Emphasis supplied.)

The above statutes create a lien for unpaid contributions and the procedure for perfecting the same.

A summary of this Act, as it pertains to liens for unpaid contributions, is as follows:

1. The commission liens attach as the result of the failure of an employer covered by the Act to make reports and payments to the commission based upon wages paid.

2. These liens attach not only to the property of the delinquent or fraudulent employer, but also against the interests of all others including innocent third persons, in the real estate, plant, works equipment and buildings improved, operated or constructed by that employer, and to any products or articles manufactured by such employer.

3. Such liens attach not from the date of recording, but from the date of the commencement of the labor for which employer contributions were due.

4. There is no statutory prohibition requiring that any one piece of property (either in the hands of the delinquent employer or an innocent third party) bear no more than its fair share of the total amount owing by such employer.

5. With the possible exception of a three year statute of limitations, there is absolutely no statutory time limit after which an employer's failure to report may not culminate in a secret and prior lien against the property of an innocent third party.

The case of State v. Lawton, 25 Wash.2d 750, 172 P.2d 465, 472, dealt with an identical problem as the case under consideration, namely the priority of a lien authorized by their unemployment compensation act.

In the Lawton case, the Washington Supreme Court was called upon to consider

whether a lien could be created upon the machinery of one Pincus when it was under lease to Lawton during a period in which Lawton failed to make his required payments to the compensation fund. There was no question but that Pincus, like the appellants and their assignor in this case, was completely innocent of any dereliction of duty toward the fund. He had employed no one. He had no payments due or owing the unemployment commission for any reason. He had become, however, hopelessly embroiled in a battle for his machinery through having rented it to one who failed to make proper unemployment fund payments just as appellants and their assignor in this case became embroiled in a battle for their mortgage security by having purchased it from one who failed to make his employment security payments. Pincus was faced with the same secret debt problem that faces appellants in the case at bar. He had rented the machinery from February until April of 1944. The Washington commission filed their lien in October of 1944, five months after the termination of the lease.

To make the parallel complete, the Washington statute relied upon is so nearly a word for word paraphrase of our Arizona sections 56–1014g and 56–1014h, supra, that it does not justify a restatement here. This identity with Arizona law is recognized by the Washington court in the following statement: "In so far as our search has revealed, Arizona is the only other state which has a provision in its unemployment compensation act similar to that part of § 93, chapter 35, supra, with which we are here concerned. We have been unable to find any case where this provision in an unemployment compensation act has been considered by the courts. So far as we have been able to discover, all of the states which have unemployment compensation acts, other than Washington and Arizona, confine the lien given for unemployment compensation contributions to the real and personal property of the liable employer. Even Oregon, which has a section in its industrial insurance act almost identical with § 93, supra, of our unemployment compensation act, does not give a lien for unemployment compensation contributions against the interest of all others in the real estate, plant, etc."

In other words, the Washington court was considering the same features of the lien provisions which alarm appellants here, i. e., not the operative effect against delinquent employers and their property but the effect upon the property of innocent third persons.

The construction of the Washington court opinion is interesting. It begins with the proposition that unemployment compensation exactions are excise taxes. Next, recognition is given to the fact that such laws are in the exercise of the police power of the state, together with recognition that police powers cannot be questioned unless "manifestly arbitrary, unreasonable, inequi-

table and unjust * * *," and that every presumption must be in favor of the constitutionality of an Act.

The Washington court determined the question by the following language:

"To hold that under the statute in the instant case the property of respondent can be taken to pay the tax owing by the liable employer, would be to deprive respondent of his property without a hearing or due process of law, and would offend not only against the fourteenth amendment to the Federal constitution, but also against § 3, article 1, of our state constitution.

"We conclude, therefore, that that part of § 93, chapter 35, Laws of 1945, which by its terms purports to create a lien prior to all other liens, except taxes, *against the interests of all others* in the plant, works, equipment and buildings, improved, operated or constructed by such employer, and also upon any products or articles manufactured by such employer, is unconstitutional and void."

■ The test of validity of such a statute is set forth in 16 C.J.S., Constitutional Law, § 198, page 573, as follows: "Admitting that the subject to which the statute relates is within the scope of legislative power, the test of validity within the police power is whether or not ends sought to be attained are appropriate and the regulations prescribed are reasonable. The measure of reasonableness of a police regulation is what is fairly appropriate to its purpose un-

der all circumstances, and not necessarily what is best; and the test of reasonableness is whether the attempted regulation make efficient constitutional guaranties and conserves rights, or is destructive of inherent rights."

The reasonableness of the Arizona statute is questioned in the following particulars:

A mortgage purchaser in the case under consideration could not discover such a lien by searching the records. He would have no means of determining a delinquent employer under the Act. He could not reasonably determine what other building or materialman liens may be upon the property which may arise from a builder or manufacturer failing to make contributions. This sort of contribution, or tax, is much different from a property tax on which a lien is secured to the state, in that a property tax lien on any definite piece of property may be checked and ascertained from the public records.

The great majority of all building construction in Arizona depends upon mortgage financing. In the past a mortgagee has been protected by being able to depend upon the public records as to priority of liens and mortgages. If such protection is taken away, which seems to be the effect of the lien authorized by this Act, then such result is unreasonable and destructive of inherent rights and the commercial life of the state would be seriously impaired.

Under the Act as written the lien authorized therein may have the effect of taking the property of a third person to pay the tax owed by an employer without a hearing or due process of law, and would offend, not only against the Fourteenth Amendment to the Federal Constitution but against Article 2, Section 4 of the Constitution of the state of Arizona.

 We hold that such parts of the Employment Security Act which by its terms create a lien prior to all other liens of innocent third parties who have taken in good faith, and without notice, is unconstitutional and void. The balance of the Act is not affected due to the separability clause, Section 56–1020, A.C.A. 1939, as amended.

The judgment of the lower court is modified by striking that part giving priority to the Employment Security Commission lien over the mortgage lien of the appellants. The case is remanded to the trial court for entry of judgment in accordance with the views herein expressed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concurring.

NOTE: Justice EVO DE CONCINI, being disqualified, the Honorable BENJAMIN BLAKE, Judge of Superior Court of Graham County, was called to sit in his stead.