479 P.2d 685

**David H. CAMPBELL, Superintendent, Motor Vehicle Division, Arizona Highway Department, Petitioner,**

**v.**

**The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA, the Honorable W. E. Patterson, the Judge thereof, and Real Party in Interest, Frank Eugene WHITE, Respondents.**

**No. 10110.**

Supreme Court of Arizona,
In Banc.

Jan. 15, 1971.

Gary K. Nelson, Atty. Gen., by John H. Ryley, Asst. Atty. Gen., Phoenix, for petitioner.

Michael E. Benchoff, Phoenix, for respondent White.

HAYS, Justice.

Respondent, Frank Eugene White, (hereinafter referred to as respondent), was arrested for driving upon the public highways of Arizona while under the influence of intoxicating liquor in violation of A.R.S. § 28–692. The arresting officer requested that respondent submit to a chemical test of his breath pursuant to A.R.S. § 28–691, subsec. A. When in the opinion of the officer respondent refused to submit to the test, the officer submitted an affidavit pursuant to A.R.S. § 28–691, subsec. D to the Motor Vehicle Division of the Arizona Highway Department. On February 13, 1970, the department pursuant to A.R.S. § 28–691, subsec. D issued an order of suspension of respondent's driver's license.[1]

Upon receiving notice of his license suspension respondent requested a hearing before the Motor Vehicle Division. On March 20, 1970 a hearing was held and the suspension of respondent's driver's license was sustained. Respondent then petitioned respondent superior court for a review of the order of suspension. Respondent superior court held a trial *de novo* and after hearing evidence ordered the suspension of respondent's driver's license vacated.[2]

This petition presents the following issues for decision by this court: (1) does Arizona's Implied Consent Law violate the privilege against self-incrimination; (2) does an arrested person have a right to the assistance of counsel in deciding whether or not to submit to a chemical test under the Implied Consent Law; (3) are proceedings to suspend the driver's license of a person who has refused to submit to the test under the Implied Consent Law civil or criminal in nature; (4) on which party is the burden of proof in a trial *de novo* before the superior court to review

1. At the time of his arrest respondent's Arizona driver's license had expired; however, prior to the issuance of the order of suspension respondent obtained a new Arizona driver's license.

2. The respondent court made the following conclusions of law:

"1. Arizona's Implied Consent Law is unconstitutional in that it denied petitioner his rights against self-incrimination under the Fifth Amendment to the U. S. Constitution and the Arizona Constitution, because it compelled him, under duress of the suspension of his license for six months, to submit to such test whereby the evidence thus obtained could be used in a criminal prosecution against him for driving while intoxicated.

2. Petitioner has the right to counsel under the Sixth Amendment of the U. S. Constitution at the time he is requested to submit to a chemical test under Arizona's Implied Consent Law to determine if he should submit to such test.

3. The State has the burden of proving by a preponderance of the evidence that the petitioner's license was validly suspended pursuant to Arizona's Implied Consent Law.

4. The arresting officer should have advised the petitioner of his Miranda rights as soon as the petitioner stepped out of his car and, therefore, all of the arresting officer's testimony relating to the events and conversations with the petitioner subsequent to the time petitioner stepped out of his car may not be considered as evidence to determine whether the arresting officer had reasonable grounds to believe that the petitioner had been driving while under the influence of intoxicating liquor.

5. A.R.S. § 28–691(B) must be interpreted to mean that in order for a suspension under Arizona's Implied Consent Law to be valid, the law enforcement officer should have advised the petitioner within the first fifteen minutes after he stopped petitioner that his license would be suspended if he refused to submit to such test.

6. The Motor Vehicle Division may not suspend petitioner's license pursuant to A.R.S. § 28–691(D) where at the time of the violation his license had expired but was renewed prior to the issuance of the order of suspension because this would be an unconstitutional retroactive enforcement of the statute."

the validity of a license suspension; (5) does the provision for summary suspension of a driver's license under the Implied Consent Law satisfy procedural due process; (6) is *Miranda* applicable where a person is arrested for driving while intoxicated; (7) does A.R.S. § 28–691, subsec. B require that a person be informed within the first fifteen minutes after he is stopped that a refusal to submit to the chemical test will result in suspension of his driver's license; (8) what constitutes a refusal to submit to a chemical test; (9) is it an unconstitutional retroactive enforcement of the Implied Consent Law to suspend a driver's license obtained after the arrest but before the order of suspension is issued; (10) what constitutes probable cause under the Implied Consent Law; (11) is the affidavit of the arresting officer constitutionally deficient; (12) does the Implied Consent Law violate the Fourth Amendment of the U. S. Constitution?

We will consider the issues in the order presented. Before doing so, however, it will be helpful if we summarize the Arizona Implied Consent Law and determine whether it is a proper vehicle for regulating the use of the state's highways.

Under Arizona's Implied Consent Law any person who is arrested for an offense arising out of acts alleged to have been committed while operating a motor vehicle upon the public highways of Arizona while under the influence of intoxicating liquor "shall be deemed to have given consent * * * to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcholic content of his blood * * *." A.R.S. § 28–691, subsec. A.

The test is to be administered at the direction of an Arizona Law enforcement officer having reasonable grounds to believe that the person operated a motor vehicle upon the public highways of Arizona while under the influence of intoxicating liquor. A.R.S. § 28–691, subsec. A. Following the arrest the officer shall allow fifteen minutes to elapse from the time the violator was stopped before administering any chemical tests and during this period the violator shall be informed that a refusal to submit to the test or tests shall result in the suspension of his driver's license. A.R.S. § 28–691, subsec. B. The fact that a person is dead, unconscious or otherwise in a condition incapable of refusing to submit does not constitute a refusal and the test may be administered. A.R.S. § 28–691, subsec. C. If the person refuses to submit to the test none shall be given; however, that person's license will be suspended for six months upon receipt of the law enforcement officer's sworn report that he had reasonable grounds to believe the person was operating a motor vehicle upon the public highways of Arizona while under the influence of intoxicating liquor. A.R.S. § 28–691, subsec. D. In the case of a resident arrested for driving while under the influence of intoxicating liquor who does not have a valid Arizona driver's license the department will deny him the issuance of a license for six months from the date of the alleged violation. A.R.S. § 28–691, subsec. D.

After suspension or a determination that a license should not be issued the person whose license has been suspended shall immediately be notified in writing and the department shall afford him an opportunity for a hearing. A.R.S. § 28–691, subsec. E. Upon his request a hearing will be held to determine whether the law enforcement officer "had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor, whether the person was placed under arrest, and whether he refused to submit to the test." A.R.S. § 28–691, subsec. E. If the result of the hearing is the affirmance of the suspension the aggrieved driver has a right to petition the superior court to review the final order of suspension or denial. A.R.S. § 28–691, subsec. F.

In Arizona the use of the highways of this state is a right which all qualified citizens possess subject to reasonable

**546**

regulation under the police power of the sovereign. Schecter v. Killingsworth, 93 Ariz. 273, 280, 380 P.2d 136 (1963). The state acting pursuant to its police powers may "make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances either with penalties or without as shall be judged to be good for the welfare of the state and its residents." McKinley v. Reilly, 96 Ariz. 176, 179, 393 P.2d 268, 270 (1964). In Myerson v. Sakrison, 73 Ariz. 308, 240 P.2d 1198 (1952) we quoted with approval the following language from 16 C.J.S. Constitutional Law § 198, page 573, concerning the test of the validity of a legislative act pursuant to the police power:

> "[T]he test of validity within the police power is whether or not ends sought to be attained are appropriate and the regulations prescribed are reasonable. The measure of reasonableness of a police regulation is what is fairly appropriate to its purpose under all circumstances, and not necessarily what is best; and the test of reasonableness is whether the attempted regulation make efficient constitutional guaranties and conserves rights, or is destructive of inherent rights." 73 Ariz. at page 313, 240 P.2d at page 1201.

In other words, for valid legislation to be enacted pursuant to the police power it must be shown that the legislation seeks to achieve a legitimate legislative end through reasonable means under the circumstances. If the legislation enacted pursuant to the police power bears some reasonable relation to the objects sought to be achieved this court will not substitute its judgment for that of the legislature. State v. A. J. Bayless Markets, Inc., 86 Ariz. 193, 342 P.2d 1088 (1959).

■ The purpose of the Implied Consent Law is to remove from the highways of this state drivers who are a menace to themselves and to others because they operate a motor vehicle while under the influence of intoxicating liquor. We recognized the legitimacy of this purpose in State v. Harold, 74 Ariz. 210, 246 P.2d 178 (1952), where we said:

> "The advent of millions of automobiles upon the highways of the state and nation in recent years and the rapidly increasing death toll that is being taken as a result of their operations thereon has made it mandatory that regulatory measures be taken to remove insofar as possible the causes contributing to this useless waste of human life and property. *It appears to us to be even more important for the legislature to prevent operators of cars who are under the influence of intoxicating liquors * * * from entering upon the highways and into the stream of traffic than to permit them to enter thereon and after a tragic accident has happened to punish them for maiming or causing the death of those who are lawfully in the use of such highways.* It is frequently the entry upon the highway by reckless or intoxicated drivers that causes the death and destruction this law seeks to prevent." (Emphasis supplied) 74 Ariz. at page 215, 246 P.2d at page 181.

■ Even though Arizona's Implied Consent Law seeks to achieve a legitimate legislative purpose the question remains whether the means are reasonable. More specifically is it reasonable under the circumstances to require a person to submit to a chemical test of his blood, breath or urine if arrested for driving while intoxicated or face a six months suspension of his driver's license. We are of the opinion that it is.

In Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) the defendant was convicted of manslaughter resulting from driving a car while intoxicated. He did not appeal, but applied to the Supreme Court of New Mexico for a writ of Habeas Corpus, claiming that his conviction was procured by evidence from an involuntary blood test, and thus he was deprived of his liberty without due process of law guaranteed by the fourteenth amendment. The Supreme Court of New Mexico

denied the writ and defendant appealed to the United States Supreme Court. The Court in affirming the decision of the Supreme Court of New Mexico, said:

"Basically the distinction rests on the fact that there is nothing 'brutal' or 'offensive' in the taking of a sample of blood when done * * * under the protective eye of a physician. To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate. Furthermore, due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct. It is on this bedrock that this Court has established the concept of due process. The blood test procedure has become routine in our everyday life. * * We therefore conclude that a blood test taken by a skilled technician is not such 'conduct that shocks the conscience,' Rochin, [v. Cal.] supra, 342 U.S. at page 172, 72 S.Ct. at page 209, [96 L.Ed. 183] nor such a method of obtaining evidence that it offends a 'sense of justice,' Brown v. Mississippi, 1936, 297 U.S. 278, 285–286, 56 S.Ct. 461, 464–465, 80 L.Ed. 682." 352 U.S. at pgs. 35–37, 77 S.Ct. at pages 410–411.

   *    *    *    *    *    *

"Modern community living requires modern scientific methods of crime detection lest the public go unprotected. The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. The States, through safety measures, modern scientific methods, and strict enforcement of traffic laws, are using all reasonable means to make automobile driving less dangerous.

*As against the right of an individual that his person be held inviolable,* even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course nearly every day, *must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road."* (Emphasis supplied) 352 U.S. at page 439, 77 S.Ct. at page 412.

The Court reaffirmed its position in *Breithaupt* in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) where it held that evidence of an analysis of petitioner's blood taken over his objection was admissible.

This court, in State v. Berg, 76 Ariz. 96, 259 P.2d 261 (1953), overruled on other grounds; State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963), has taken the position that the results of a drunkometer test are admissible in evidence even though the specimen of breath used in the test was forcibly taken from the defendant over his objection. In *Berg* we noted that:

"With a rapidly increasing death toll upon the public highways of the nation, much of which may be attributed to drunk driving, we believe the slight inconvenience to a defendant arrested for drunk driving in requiring him to exhale his breath in the direction of a rubber suction tube which in nowise contacts his body or contributes to his discomfort, is a burden which such defendant must bear for the common interest." 76 Ariz. at page 103, 259 P.2d at page 266.

Clearly, upon the basis of the above cited authority, the breathalyzer test is a reasonable means for achieving the goals of the legislature. We believe that it is also reasonable to suspend the driver's license of a person who refuses to submit to the tests provided for in the Implied Consent Law. Such a provision assures that no physical violence will be directed against a person who refuses in order to obtain the necessary chemical evidence. It minimizes

the risk that conduct which would "shock the conscience of the court" will occur. See Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).[3]

■ We will now turn to the question whether Arizona's Implied Consent Law violates the privilege against self-incrimination. It has been well settled since Schmerber v. State of California, supra, that chemical tests of the blood, breath or urine, as provided by A.R.S. § 28–691, subsec. A, do not violate the privilege against self-incrimination. In Schmerber the court found that the privilege against self-incrimination is only a "bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." 384 U.S. at page 764, 86 S.Ct. at page 1832.

· It is not respondent's position that the taking of the breath sample violates the privilege against self-incrimination, but that the privilege is violated by the provision in A.R.S. § 28–692, subsec. H that evidence of refusal to submit to the chemical tests "shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was driving * * * while under the influence of intoxicating liquor." It is respondent's position that refusal whether verbal or nonverbal is sufficiently communicative under Schmerber and that comment upon such refusal violates the privilege against self-incrimination.

There is some authority to support the position that comment upon the refusal of a person to submit to a chemical test violates the privilege against self-incrimination. A review of these cases reveals that they are largely from states which recognize a statutory right to refuse to submit to the test.[4] On the other hand, states which do not recognize a statutory right to refuse to submit to the chemical test allow comment upon such refusal.[5]

In People v. Ellis, 65 Cal.2d 529, 55 Cal. Rptr. 385, 421 P.2d 393 (1966) the court held that it was not a violation of the privilege against self-incrimination to comment upon the refusal of a defendant to speak for purposes of voice identification because the refusal was not testimonial communication. The court said:

"Nor was defendant's refusal to 'display his voice' itself a testimonial of communication. It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody * * * false alibi * * *

---

**3.** Suspension is also reasonable because a person who refuses the test is very likely to be a dangerous driver. In City of Westerville v. Cunningham, 15 Ohio St. 2d 121, 239 N.E.2d 40, 41 (1968) the court said:

"Where a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is intoxicated, the taking of such a test will probably establish that he is intoxicated. Thus, if he is not intoxicated, such a test will provide evidence for him; but, if he is intoxicated, the test will provide evidence against him. Thus, it is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and his consciousness of guilt * * *."

**4.** See, e. g., Stuart v. District of Columbia, 157 A.2d 294 (Munic.Ct.App.D.C., 1960) ; State v. Ingram, 67 N.J.Super. 21, 169 A.2d 860 (1961) ; State v. Severson, 75 N.W.2d 316 (S.Ct.N.D., 1956) ; Duckworth v. State, 309 P.2d 1103 (Crim. Ct.App.Okl., 1957). Contra: State v. Bock, 80 Idaho 296, 328 P.2d 1065 (1958). See also 87 A.L.R.2d 370.

**5.** See e. g., State v. Starnes, 21 Ohio St. 2d 38, 254 N.E.2d 675 (1970) ; City of Westerville v. Cunningham, 15 Ohio St. 2d 121, 239 N.E.2d 40 (1968) ; State v. Holt, 156 N.W.2d 884 (S.Ct.Iowa 1968) ; State v. Dugas, 252 La. 345, 211 So.2d 285 (1968) ; People v. Sudduth, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1967) ; People v. Ellis, 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966) ; Alldredge v. State, 239 Ind. 256, 156 N.E.2d 888 (1959). See also 87 A.L.R.2d 370.

flight * * * suppression of evidence * * * and failure to respond to accusatory statements when not in police custody * * * its admission does not violate the privilege." 55 Cal.Rptr. at page 389, 421 P.2d at page 397.

The court in People v. Sudduth, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1967) reached the same conclusion while holding that since a suspect does not have a constitutional right to refuse to take a breathalyzer test comment upon such refusal is proper. *See also* Bush v. Bright, 264 Cal. App.2d 788, 71 Cal.Rptr. 123 (1968); Finley v. Orr, 262 Cal.App.2d 656, 69 Cal.Rptr. 137 (1968).

■ In Arizona, A.R.S., § 28–691, subsec. D provides that "[I]f a person under arrest refuses to submit to a chemical test designated by the law enforcement agency as provided in subsection A, none shall be given." This language does not give a person a "right" to refuse to submit to the test only the physical power. We agree with the court in Bush v. Bright, supra, that the "obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is 'deemed to have given his consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates." 71 Cal.Rptr. at page 124. It is the opinion of this court that since a person does not have a right to refuse to submit to the test and because the refusal itself is not "testimonial communication" that comment upon such refusal is not improper.[6]

Respondent next contends that he was denied his right to counsel under the Sixth Amendment of the United States Constitution because he was not advised, prior to the administering or attempted administering of the breathalyzer test, that he could consult with an attorney in order to make a decision as to whether or not he should submit to the test. In Schmerber v. State of California, supra, the court rejected a similar right to counsel claim because "[n]o issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented." 384 U.S. at page 766, 86 S. Ct. at page 1833.

■ The United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) held that an accused has a right to the assistance of counsel at any critical stage of the prosecution. In *Wade* the Court found that a post-indictment lineup was such a critical stage. The following passage from *Wade*, however, makes it evident that under the rationale of that decision respondent was not entitled to counsel prior to deciding whether or not to submit to the breathalyzer test:

"The Government characterizes the lineup as a mere preparatory step in the gathering of the prosecution's evidence, not different—for Sixth Amendment purposes—from various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like. We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analy-

---

6. We are aware that the United States Supreme Court in Schmerber v. State of California, 384 U.S. 757, 765 fn. 9, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) cautioned that testimonial products of administering such tests would fall within the privilege and that general fifth amendment principles would apply. We do not believe, however, that the inferences flowing from the wrongful refusal to submit to the test are such testimonial products. *See* People v. Ellis, 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966).

ses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." 388 U.S. at pages 227–228, 87 S.Ct. at pages 1932–1933.

As previously noted, under Arizona's Implied Consent Law a person does not have a right to refuse to submit to a chemical test *only* the physical power; therefore, as in *Schmerber,* there is no issue of counsel's ability to assist respondent in respect of any rights he did possess. It is the opinion of this court that respondent was not entitled to the assistance of counsel in deciding whether or not to submit to the breathalyzer test. See State v. Petkus, 269 A.2d 123 (S.Ct.N.H.1970); State v. Kenderski, 99 N.J.Super. 224, 239 A.2d 249 (1968).[7]

■ Respondent next urges that proceedings under the Implied Consent Law are criminal in nature and that the burden of proof at the trial *de novo* should be upon the state. In Blow v. Commissioner of Motor Vehicles, 164 N.W.2d 351, 352–353 (S.Ct.S.D.1969) the court described proceedings to determine or review suspension of a driver's license for refusal to submit to a chemical test as civil and administrative proceedings "separate and distinct from a criminal action on a charge of driving while under the influence of intoxicating liquor or drugs." The court in Deaner v. Commonwealth, 210 Va. 285, 170 S.E.2d 199 (1969) in characterizing implied consent proceedings as civil and administrative in nature, said:

"An accused who refuses a blood test is not required to post bond for his appearance, and he does not have to give bail or enter into a recognizance. He is under no legal duty to appear at the hearing if

he does not desire to introduce evidence of the basis and reasonableness of his refusal. He cannot be fined or imprisoned either for his refusal to take the test, or for his failure to appear at a hearing. In fact there is nothing about the entire proceeding that parallels the procedure in a criminal prosecution." 170 S.E.2d at page 202.

In Severson v. Sueppel, 260 Iowa 1169, 152 N.W.2d 281, 285 (1967) the court noted that the operation of a motor vehicle may give rise to both a civil and administrative licensing procedure and a criminal action. It also noted that the "outcome of one action is of no consequence to the other. Acquittal of the criminal charge of operating a motor vehicle while intoxicated did not preclude defendant from revoking plaintiff's driver's license." See Gottschalk v. Sueppel, 258 Iowa 1173, 140 N.W.2d 866 (1966); Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75 (1961). See also 88 A.L.R.2d 1064; 96 A.L.R.2d 612, and cases collected in State v. Starnes, 21 Ohio St.2d 38, 254 N.E.2d 675, 679 (1970). We hold that suspension proceedings under Arizona's Implied Consent Law are civil in nature and are therefore governed by the rules of civil procedure.

■ It is now necessary to consider respondent's argument that the burden of proof at the trial *de novo* should be upon the state. We are aware that there is authority to the contrary, see Hoban v. Rice, 22 Ohio App.2d 130, 259 N.E.2d 136 (1970) and Burbage v. Department of Motor Vehicles, 450 P.2d 775 (S.Ct.Or.1969); however, it is well established in this jurisdiction that in a trial *de novo* the burden remains the same whether it is in relation to an appeal from the justice court or an ap-

---

7. Some courts have held that no right to counsel exists because suspension proceedings under the Implied Consent Law are civil in nature. See, e. g., Gottschalk v. Sueppel, 258 Iowa 1173, 140 N.W.2d 866 (1966); Finocchairo v. Kelly, 11 N.Y.2d 58, 226 N.Y.S.2d 403, 181 N.E. 2d 427 (1962); Blow v. Commissioner

of Motor Vehicles, 164 N.W.2d 351 (S.Ct. S.D., 1969). In Ent v. State, Department of Motor Vehicles, 265 Cal.App.2d 936, 71 Cal.Rptr. 726 (1968) the court held that imposing condition that attorney be present before, consent will be given for a chemical test constitutes refusal.

peal from an administrative agency. Vazzano v. Superior Court, 74 Ariz. 369, 249 P.2d 837 (1952). The burden of proof at the trial *de novo* is upon the state.

We will now consider whether summary suspension of a driver's license prior to a hearing, as provided by the Implied Consent Law, is a denial of procedural due process as respondent argues. Recently, the United States Supreme Court in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) recognized that "[I]n a wide variety of situations, it has long been recognized that where harm to the public is threatened, and the private interest infringed is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing." 90 S.Ct. at page 1018, fn. 10. A similar view was expressed by the court in Blydenburg v. David, 413 S.W.2d 284 (S.Ct.Mo., 1967) where it was held that a driver's license could be suspended without "prior notice or a hearing since due process of law is satisfied if there is provision for an administrative hearing subject to judicial review or the right to have a hearing in a court which may adequately review the administrative decision." 413 S.W.2d at page 290.

This court in State v. Birmingham, 95 Ariz. 310, 390 P.2d 103 (1964) upheld the authority of the state highway department to suspend, without a preliminary hearing, the driver's license of a person who has frequent convictions of serious offenses against traffic regulations. In *Birmingham* we said:

"We held in Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136, that it is not simply a privilege to drive upon the public highways of this state but that it is a right which, of course, cannot be taken without due process of law. We indicated that some courts have determined that there is no requirement for a hearing prior to the administrative order suspending an operator's license and have justified the delay in the hearing until after administrative action on the basis of compelling public interest which demands immediate action. We believe that there is a compelling public interest in having those showing disrespect and disregard for traffic laws removed immediately from the highways of Arizona and that, therefore, the statute permitting the immediate suspension without a hearing can be constitutionally justified." 95 Ariz. at page 315, 390 P.2d at page 106–107.

Accord: Campbell v. Chatwin, 102 Ariz. 251, 428 P.2d 108 (1967).

As previously noted, there is a high degree of probability that a motorist who refuses to submit to a reasonably reliable chemical test for determining intoxication is a dangerous driver; therefore, it is the opinion of this court that there exists a compelling public interest in the immediate removal of such persons from the highways of this state pending a hearing on the matter. "The incidental hardship upon an individual motorist, in having his license suspended pending investigation and review, must be borne in deference to the greater public interest served by the statutory restriction." Wall v. King, 206 F.2d 878, 883 (1st Cir.1953).

Respondent next urges that Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is applicable to suspension proceedings under the Implied Consent Law. In Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969) the court said that *Miranda* required a person be advised of his constitutional rights when "the person being interrogated was 'in custody at the station *or otherwise deprived of his freedom of action in any significant way.*'" 394 U.S. at page 327, 89 S.Ct. at page 1097.

In State v. Bliss, 238 A.2d 848 (Del.Sup., 1968) the court held that *Miranda* did not apply to motor vehicle offenses. In *Bliss* a police officer stopped a driver of a car for driving in an erratic manner. The officer smelled the odor of alcohol on the driver's breath and called for a patrol wagon which carried the driver downtown for questioning and intoxication tests. A similar result was reached in Capler v. Green-

ville, 207 So.2d 339 (S.Ct.Miss., 1968) cert. den. 392 U.S. 941, 88 S.Ct. 2323, 20 L.Ed.2d 1403, where the court held that the Sixth Amendment of the United States Constitution does not require that a person arrested for a misdemeanor involving drunkenness be advised of his right to counsel immediately upon being detained. In *Capler* the officer had noticed an automobile weaving from one traffic lane to another and nearly run off the side of the road. The officer stopped the automobile and when he noticed that the driver emitted a strong odor of alcohol and that he walked with a stagger, placed the driver under arrest for reckless driving and driving while intoxicated.

▮▮ It is the opinion of this court that *Miranda* is not applicable to the routine traffic offense where the driver is detained no longer than is necessary to make out the citation and have it signed pursuant to A.R.S. § 28–1054. However, Miranda warnings must be given when the officer determines that the provisions of A.R.S. § 28–1053 come into play or an arrest for a misdemeanor or felony is to be made. At this time the person is being "deprived of his freedom of action in [a] significant way." Miranda v. State of Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed. 2d 694 (1966); Orozco v. Texas, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed.2d 311 (1969).[8] The reporter's transcript reflects the appropriate Miranda warnings were given by the officer prior to any questioning regarding the state of intoxication of the defendant.

▮ Respondent next urges that the arresting officer in the instant case erred when he did not inform respondent within the first fifteen minutes after he stopped respondent that respondent would lose his driver's license if he refused to submit to

the breathalyzer test. It is respondent's position that A.R.S. § 28–691, subsec. B requires that a person arrested for driving while intoxicated be advised within fifteen minutes after he is stopped that his license will be suspended if he refuses to submit to the test. The statute in question provides:

"B. Following the arrest by a law enforcement officer, such officer shall allow a period of fifteen minutes to elapse from the time the violator is stopped before administering any test prescribed by the terms of subsection A of this section. During such period of time the law enforcement officer shall inform the violator that his license or permit to drive will be suspended or denied if he refuses to submit to the test." A.R.S. § 28–691, subsec. B.

We do not agree with respondent's interpretation of this language in the statute. We understand the first sentence of A.R.S. § 28–691, subsec. B to mean that the arresting officer shall not administer any chemical test within the first fifteen minutes after the person is stopped. In other words, any chemical test must be administered after fifteen minutes have passed from the time the arrested person was initially stopped. The reason for the fifteen minute waiting period is to allow "enough time for the mouth to clear so that the deep lung breath measured will not be contaminated." Comment, "The Missouri Implied Consent Law," 12 St. Louis Univ. L.J. 287, 289 (1968). The second sentence of A.R.S. § 28–691, subsec. B relates back to the first sentence and requires the officer advise the arrested motorist during the period prior to the administering or attempted administering of any chemical test that a refusal to submit to the test will result in suspension of his license.

---

8. *Miranda* is not applicable to evidence obtained from a breathalyzer test since *Miranda* is "bottomed on the privilege against self-incrimination and bars the use of communications by or testimonial utterances of a person unless and until the four-fold warning has been given and

applied. A breathalyzer test is unrelated to a communication by the subject." State v. Kenderski, 99 N.J.Super. 224, 229, 239 A.2d 249, 251 (1968). *See also* State ex rel. Murphy v. City Court of City of Tucson, 12 Ariz.App. 529, 472 P.2d 952, 954 (1970).

We must next determine what constitutes a refusal to submit to a chemical test under the Implied Consent Law. In Finley v. Orr, 262 Cal.App.2d 656, 69 Cal.Rptr. 137 (1968) the court found that oral consent may be revoked by non-verbal refusal. In *Finley* the driver orally agreed to submit to a breathalyzer test; however, he would not blow into the mouthpiece even though he was given four or five opportunities to do so. The officer concluded that the driver refused to submit to the test and the court upheld this as a non-verbal refusal. It is the opinion of this court that a refusal to submit to the test occurs where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test. *See* State v. Hurbean, 23 Ohio App.2d 119, 261 N.E.2d 290, 297 (1970).

Respondent's next argument is that it is an unconstitutional retroactive enforcement of the Implied Consent Law to suspend a driver's license obtained after the arrest for driving while intoxicated but before the order of suspension for refusing to submit to the chemical test was issued. At the time of his arrest respondent did not possess a valid Arizona driver's license; however, after his arrest, but prior to receiving notification of the suspension of his driver's license respondent obtained a new Arizona driver's license. It is respondent's position that "[s]imple logic dictates that the State could not suspend what the man did not have and the State's action, if any, should have been a denial in the issuance of the subsequent and different license." A.R.S. § 28–691, subsec. D provides:

"If the person is a resident without a license or permit to operate a motor vehicle in this state, the department shall deny to the person the issuance of a license or permit for a period of six months after the date of the alleged violation * * *."

It is evident from the language of this section that the sanctions of the Implied Consent Law take effect as of the date of the alleged violation and the refusal of the motorist to submit to the chemical test. As of the moment a motorist arrested for driving while intoxicated refuses to submit to a chemical test his right to operate a motor vehicle upon the public highways of Arizona is suspended for six months subject to the provisions for hearing and review provided in the statute. In the instant case when respondent obtained his new Arizona driver's license he had no right to operate a motor vehicle upon the public highways of this state for six months. Consequently, we find no merit in respondent's argument that the suspension of his new license constituted a wrongful retroactive enforcement of the Implied Consent Law.

It is now necessary to consider the issue of what constitutes probable or reasonable cause under the Implied Consent Law. In order for A.R.S. § 28–691 to come into play it is necessary to determine if the law enforcement officer had reasonable grounds to arrest the person for driving while under the influence of intoxicating liquor.

In order for a police officer to arrest a person without a warrant for committing a misdemeanor it must appear that the misdemeanor was committed in the officer's presence. State v. Nixon, 102 Ariz. 20, 423 P.2d 718 (1967). In State v. Vaughn, 12 Ariz.App. 442, 471 P.2d 744 (1970) the Court of Appeals reviewed the requirements for probable cause to make an arrest without a warrant. The court in *Vaughn* said:

"The lawfulness of an arrest without a a warrant must be based upon probable cause. Probable cause exists when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, is sufficient in itself to warrant that a man of reasonable caution and prudence to conclude that a crime has been or is be-

ing committed. (Cases cited). Probable cause is something less than proof needed to convict and something more than a raw unsupported suspicion. It is a suspicion or belief of guilt that is 'well-grounded.'" 471 P.2d at page 746. The existence of probable cause is determined by an objective rather than a subjective standard. State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969).

In Davis v. Waters, 103 Ariz. 87, 90, 436 P.2d 906, 909 (1968) we held that a person is driving while under the influence of an intoxicating liquor "if his control of his vehicle is to the *slightest degree affected* by his consumption of the intoxicant." We believe the arresting officer's testimony in the instant case sufficiently establishes that the officer had reasonable grounds to believe that respondent was under the influence of intoxicating liquor.

Respondent next cites Application of Grimshaw, 7 Misc.2d 218, 165 N.Y.S.2d 263 (1957) as authority to support his position that the affidavit of the arresting officer is deficient because it is couched in conclusionary language. We have examined the affidavit and do not find that it violates any constitutional guarantees.

Respondent's final contention is that the Implied Consent Law violates the Fourth Amendment of the United States Constitution. We find no merit in this argument in light of the holding in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

The cause is remanded for trial *de novo* or proceedings not inconsistent with this opinion.

LOCKWOOD and UDALL, JJ., concur.

HENRY S. STEVENS, Judge, Court of Appeals (specially concurring):

I concur except that it is my opinion that the court should disapprove the use of the refusal to take the test in criminal actions, thus negating the words "or criminal" in A.R.S. § 28-692, subsec. H.

CAMERON, J., concurs.

The Honorable FRED C. STRUCKMEYER, Chief Justice, having disqualified himself from participating in the determination of this case, the Honorable HENRY S. STEVENS, Judge of the Court of Appeals, was called in to sit in his stead.