NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL
RIGHTS AS TO A.D., K.D., and A.D.

No. 1 CA-JV 23-0047
FILED 8-29-2023

Appeal from the Superior Court in Maricopa County
No. JD38774
The Honorable Pamela Hearn Dunne, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Michael S. Catlett joined.

**C R U Z**, Judge:

¶1        A.D. ("Father") appeals[1] the superior court's order terminating his parental rights as to his children, Aaron, Jason, and Alyssa.[2] We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In December 2019, the Department of Child Safety ("DCS") removed the children from the home after Alyssa ingested fentanyl and required emergency hospitalization, and Father was charged with child abuse.  The superior court found the children dependent as to Father.  After DCS removed the children, Father participated in reunification services, including substance abuse treatment and testing.  The children were eventually returned to the home, and in January 2021, the superior court dismissed the dependency.

¶3        Later that month, DCS received reports that Father "had relapsed on Percocet" and "overdosed on drugs and had to be given Narcan."  DCS also received additional reports that Alyssa fell into a pool while Father was "passed out while under the influence" of Percocet, and a family member saved her from drowning.  DCS requested Father resume substance abuse testing and treatment, but he refused.  DCS received an additional report that Father was using drugs and abusing another child in the home.  Father was then arrested on drug charges and admitted the children had not been staying in the home for almost two months.

¶4        Father again refused to participate in any services, including substance abuse testing, and DCS removed the children from the home and brought another dependency action against Father. DCS referred Father for substance abuse testing and treatment, but he refused to participate.  In November 2021, Father was convicted of child abuse relating to the first dependency and incarcerated.

¶5        After Father's release, DCS referred him for substance abuse treatment.  Father completed twice weekly substance abuse testing for less than two months and refused to participate in substance abuse treatment after May 2022. Father claimed he participated in some less frequent testing

---

[1]        Only Father's parental rights are at issue here.  As of the termination hearing, Father's paternity had not been established as to Alyssa.

[2]        We use pseudonyms to refer to the children.

through his probation supervision, but his family reported to his probation officer that Father was again abusing drugs. Father then attended a detox program, but per his own admission, he left the program while being escorted to the inpatient rehabilitation program.

**¶6** In September 2022, DCS again moved to terminate Father's parental rights on the substance abuse and nine-month out-of-home placement grounds. DCS referred Father for substance abuse treatment shortly before the termination hearing, but he claimed he could not attend because it conflicted with his work schedule.

**¶7** The superior court terminated Father's rights on both grounds, finding termination was in the children's best interests. Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), -2101(A)(1), and 8-235(A).

## DISCUSSION

**¶8** Father claims the superior court erred in terminating his parental rights on both the substance abuse and nine-month out-of-home placement grounds. The superior court may terminate parental rights if DCS proves any § 8-533(B) statutory ground by clear and convincing evidence, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and if termination is in the children's best interests as proven by a preponderance of the evidence, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We do not reweigh evidence on appeal, and we will affirm the superior court's factual findings if supported by reasonable evidence. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 6 (App. 2016).

I.      Substance Abuse Ground

**¶9** Father first argues the superior court's order terminating his parental rights on the substance abuse ground is not supported by reasonable evidence, but he does not challenge the court's best interests findings. The superior court may terminate a parent's rights under A.R.S. § 8-533(B)(3) if it finds by clear and convincing evidence that "the parent is unable to discharge [their] parental responsibilities because of . . . a history of chronic abuse of dangerous drugs [or] controlled substances," and there are "reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." In addressing termination pursuant to § 8-533(B)(3), the court may consider any admissible evidence, including evidence of the length and frequency of the substance abuse, the substances abused, the behaviors associated with the abuse, prior efforts to maintain sobriety, and prior relapses in determining whether reasonable grounds

exist to believe the condition will continue for a prolonged period. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016).

**¶10** The record supports the court's order. Father has struggled with substance abuse, including abusing methamphetamine, Percocet, and fentanyl, and he was convicted of child abuse related to his substance abuse. Father argues DCS "presented no evidence that [he] had not addressed his substance abuse issues" or that "from March 2022 through trial, [he] had used fentanyl or any other substance other than marijuana." But Father refused to participate in testing through DCS after May 2022, and the superior court properly drew a negative inference. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378-79, ¶¶ 26-29 (App. 2010); *cf. Campbell v. Superior Court*, 106 Ariz. 542, 547-48 n.3 (1971) ("[I]t is reasonable to infer that a refusal to take [a breathalyzer] test indicates the defendant's fear of the results of the test and his consciousness of guilt.") (citation and internal quotation marks omitted). The court also found Father's testimony not credible that he participated in testing through probation and completed a rehabilitation program. We will not substitute our judgment or reweigh conflicting evidence. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002); *Cook v. Losnegard*, 228 Ariz. 202, 205, ¶ 11 (App. 2011).

**¶11** Father claims, "the evidence showed that [he] had gone more than six months free from illegal or improper substances" and that he completed a one-month substance abuse rehabilitation program. But Father had not tested through DCS since May 2022, and DCS received several reports that Father had relapsed. Father also admitted that he left the treatment facility before undergoing inpatient care just four months before the termination hearing. Even if Father had "gone more than six months free from illegal or improper substances," temporary abstinence does not outweigh a parent's "significant history of abuse" or the parent's "consistent inability to abstain" from substances. *See Raymond F.*, 224 Ariz. at 379, ¶ 29.

**¶12** Father's history of substance abuse supports the court's finding that he is unable to discharge his parental responsibilities. This dependency started after a family member saved Alyssa from drowning while Father was passed out from drug use. Father's substance abuse was also the central theme of prior dependency proceedings which began after Alyssa ingested fentanyl and Father was convicted of child abuse. While Father was able to demonstrate sobriety in the prior dependency and DCS returned the children, he relapsed several times. Father's history offers reasonable grounds to believe his substance abuse will continue for a prolonged indeterminate period.

**¶13** Father also argues the superior court erroneously terminated his parental rights based on his use of legal medical marijuana under the Arizona Medical Marijuana Act. *See* A.R.S. §§ 36-2801 to -2822. But the court terminated Father's parental rights based on his "history of abusing methamphetamine and Fentanyl," and the record supports the court's order.

**¶14** For the foregoing reasons, termination pursuant to A.R.S. § 8-533(B)(3) is supported.

II. Nine-month Out-of-home Placement Ground

**¶15** Because we affirm on grounds of substance abuse, we need not evaluate whether reasonable evidence supported the court's order on the nine-month out-of-home placement ground. *See Jesus M.*, 203 Ariz. at 280, ¶ 3.

III. Best Interests

**¶16** In addition to proving grounds exist for termination, DCS must prove by a preponderance of the evidence that terminating a parent's rights would be in the children's best interests. A.R.S. § 8-533(B); *Kent K.*, 210 Ariz. at 288, ¶ 41.

**¶17** Father does not challenge the court's best interests findings. However, our independent review of the record reveals a sufficient basis for the court's findings. The court found that the children are in an adoptive placement, their needs are being met, "and the child[ren's] prospective adoption is otherwise legally possible and likely," such that the termination of parental rights is in the children's best interests "so as to permit adoption." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016).

**¶18** The superior court also found that "[m]aintaining of a parent-child relationship would be detrimental to the children because . . . Father [has not] demonstrated sobriety and the Children have lingered in care for approximately a year and a half as the parents were given every opportunity to become sober." And this family placement with their uncle "allows the children to maintain relationships with extended family members." More than that, the uncle "is providing the children with a loving and nurturing home environment and the children have been thriving" in their uncle's care.

**CONCLUSION**

¶19      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA