OPINION OF THE COURT
Maynard T. Roman, J.
The defendant has moved to suppress the results of a breathalyzer test. The evidence at the suppression hearing revealed that the defendant was involved in an automobile accident on October 1,1982. After arriving on the scene, the police chief observed the defendant’s behavior and placed him under arrest for driving while intoxicated. (Vehicle and Traffic Law § 1192 [3].)
Following the arrest, the officer read a “DWI warning card” to the defendant which stated, inter alla, that refusal to submit to the chemical test could result in revocation of his license regardless of the outcome to the DWI charge and that his refusal to take the test could be introduced into evidence against him. The defendant initially refused to take the test. However, after again hearing the “DWI warning card” at the village police station, he consented to the test. At no time was the defendant advised of his right to counsel, asked if he wished to speak to an attorney, or advised his Miranda rights. The test results showed a .20% blood alcohol level, and defendant was also then charged with a violation of Vehicle and Traffic Law § 1192 (2).
The defendant presents various arguments in support of suppression. Most of these have been reviewed by other New York courts and can be summarily rejected. Thus, “inasmuch as the *531 defendant has no constitutional right to refuse to take the test, the privilege against self incrimination is not applicable”. (People v Thomas, 46 NY2d 100, 106, appeal dismissed 444 US 891.) Similarly, the mere “failure to inform an individual of his Miranda rights does not preclude the admission into evidence of his refusal to take a chemical test”. (Matter of Hoffman v Melton, 81 AD2d 709, 710.) Finally, it “is well established that express consent for withdrawal of a motor vehicle operator’s blood is not constitutionally required [thus a] compelled blood test does not violate due process (Breithaupt v Abram, 352 US 432), nor does it violate the privilege against self incrimination or constitute an unreasonable search and seizure (Schmerber v California, 384 US 757).” (People v Kates, 77 AD2d 417, 419.)
While the defendant’s theories are somewhat interrelated, he does appear to present one argument which apparently has not been discussed in the reported decisions. Stripped to its bare essence, he contends that by reading the DWI warning to the defendant the State presented a one-sided view of the consequences of refusing to take the test. Since only an attorney can assess the various evidentiary advantages of refusal to take the test, the State has engaged in affirmative conduct prejudicial to the defendant’s rights. Thus, the State should also be required to inform the defendant of the potential benefits of a refusal, or, at a minimum, inform the defendant of his right to consult with counsel. To do neither is tantamount to impermissible compulsion.
An analysis of this argument must begin with an analysis of the general rules regarding the 6th Amendment right to counsel. It is axiomatic that this right only attaches when the confrontation between the State and the accused reached a “critical stage.” (See, e.g„ Hamilton v Alabama, 368 US 52, 54; White v Maryland, 373 US 59; Miranda v Arizona, 384 US 436.) The more difficult question is determining what qualifies as a critical stage.
For example, in Coleman v Alabama (399 US 1), the Supreme Court ruled that an Alabama preliminary hearing was not required to present defenses, even though testimony taken in the absence of counsel could not be used at the trial. In so holding, the court stated that in spite of these facts, it:
“does not follow that the Alabama preliminary hearing is not a ‘critical stage’ of the State’s criminal process. The determination whether the hearing is a ‘critical stage’ requiring the provision of counsel depends, as noted, upon an analysis ‘whether potential substantial prejudice to defendant’s rights *532 inheres in the * * * confrontation and the ability of counsel to help avoid that prejudice.’ United States v. Wade, supra, at 227. Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer’s skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State’s case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State’s witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.
“The inability of the indigent accused on his own to realize these advantages of a lawyer’s assistance compels the conclusion that the Alabama preliminary hearing is a ‘critical stage’ of the State’s criminal process at which the accused is ‘as much entitled to such aid [of counsel] * * * as at the trial itself.’ Powell v. Alabama, supra, at 57.” (Supra, pp 9-10.)
In light of these considerations, was this matter at a critical stage after the defendant was read the DWI warning card, but before his consent was given? As noted earlier, the Court of Appeals has stated that the privilege against self-incrimination is not violated by the choice offered to the defendant. (People v Thomas, supra.) However, in that case the court was dealing with a refusal to take the test and the subsequent use of that fact as evidence at the trial. In so holding the court emphasized that regardless of whether the evidence was considered communicative or testimonial, “[I]t should be admissible so long as the defendant was under no compulsion of any sort to refuse to take the test.” (Supra, at p 107.) In effect, without such “compulsion” the transaction had not reached a critical stage.
The argument in this case is substantially, if somewhat subtly, different. Here the question is whether there was compulsion to take, not to refuse, the test, and whether this compulsion elevates the transaction to a critical stage.
This court believes that it does. In the Thomas case (supra, at p 107) the Court of Appeals stated:
*533 “It is only * * * evidence that has been extracted from the defendant by compulsion in some form that falls before the constitutional proscriptions.
“Compulsion need not of course be physical; it may well be accomplished by the State’s attaching to the alternative course of action a penalty, punishment or detriment”.
The court went on to state that license revocation or use of the refusal as evidence did not, in and of themselves, amount to such a penalty. Rather, these results must be viewed “as a permissible condition” to the privilege of using the highways. (Supra, at p 110.)
The argument here involves more. The failure to note the benefits of refusal can well result in a detriment to the defendant at the trial. This is not a matter of an administrative penalty effecting the right to use a highway, but concern which goes to the very heart of the defendant’s ability to mount a defense in a criminal proceeding. It may well be that the “better” course would be to accept the “Penalties” and proceed to trial under Vehicle and Traffic Law § 1192 (3). At a minimum, the benefits and detriments of each option could only be intelligently assessed in the presence of an attorney, particularly since only the detriments of refusal were explained by the officer, not just once, but twice. This argument concerning the right to counsel was not discussed by the Court of Appeals and to that extent, that decision is not dispositive of this case. Thus, this court finds that the transaction in this case had reached a “critical stage” because of the inability of the defendant “on his own to realize [the] advantages of a lawyer’s assistance”. (Coleman v Alabama, supra, at p 9.) The motion to suppress must, therefore, be granted.
In concluding, this court wishes to reemphasize the fact that the argument presented here does not appear to have been raised in any of the reported cases cited to the court. While previous cases provide some guidance, they do not control this case. Although this court is hesitant to establish “new” constitutional guidelines it must determine the issues presented to it. Because of the uniqueness of the argument, and its potential widespread application, the court strongly urges that the issues be presented to a higher court so that some guidelines for local Justices be developed.