711 P.2d 602

**The STATE of Arizona, Appellant,**

v.

**Robert Lee HOLLAND, Appellee.**

**No. 1 CA–CR 8093.**

Court of Appeals of Arizona,
Division 1.

June 18, 1985.

Thomas E. Collins, Maricopa County Atty. by H. Allen Gerhardt, Deputy County Atty., Phoenix, for appellant.

Minne & Sorenson by Roger J. Blake, Phoenix, for appellee.

## OPINION

LACAGNINA, Judge.

In this case Robert Lee Holland was charged by information with one count of driving when under the influence of intoxicating liquor or drugs while license is suspended, revoked or refused and one count of driving with a blood alcohol level of .10 or more while license is suspended, revoked or refused, both class 5 felonies. Holland filed a motion to suppress the results of a breath test and also filed a motion to dismiss. Following the hearing on the motion to dismiss, the court took the matter under advisement and subsequently dismissed the case with prejudice. The state appeals this dismissal.

The facts show that on September 27, 1983, following his arrest for driving while intoxicated, police transported Holland to the Squaw Peak Police Station and issued *Miranda* rights to him. The police began to question Holland, and at some point during the conversation, he asked to call his attorney. He made a telephone call to his attorney's answering service, and when the attorney returned the call, the officer answering the phone informed him that Holland was under arrest for DUI. His attorney requested a confidential phone conversation with Holland, and the officer said he could arrange it, but as the attorney/client conversation began, the attorney asked about the privacy of the arrangements, and Holland responded that the officer could hear him speaking. Holland then asked the officer to step out of earshot, but he refused to do so. Because of this, the attorney could not get any information from Holland as to his condition at that time and, therefore, was unable to advise him how to proceed, whether he should give a blood test, submit to the breathalyzer test or refuse to do anything. He was also unable to advise Holland or assist him in gathering any exculpatory evidence. The conversation ended soon after, and he eventually submitted to the breath test.

On appeal, the state argues an accused is not entitled to the advice of counsel before taking the breathalyzer test and is not even entitled to a telephone call before he takes the test. Holland argues the right to be represented under Rule 6.1(a), Rules of Criminal Procedure, 17 A.R.S., includes the right to consult in private with an attorney as soon as feasible after he has been taken

into custody. Specifically, Holland argues he should have been able to have a private conversation with his attorney in advance of the proceedings sufficient to allow adequate preparation. Holland argues the ruling in *McNutt v. Superior Court*, 133 Ariz. 7, 648 P.2d 122 (1982), is controlling under these facts. We agree and affirm.

In *McNutt*, supra, the defendant was denied a request to call his attorney without justification, and the Arizona Supreme Court in that case stated what rights an accused has upon arrest for DUI:

"This action by the state clearly violated petitioner's 'right to consult in private with an attorney * * * as soon as feasible after a defendant is taken into custody' guaranteed by Ariz.R.Crim.P. 6.1(a). We agree with the Court of Appeals of New York, which said '[L]aw enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand.' *People v. Gursey*, 22 N.Y.2d 224, 227, 239 N.E.2d 351, 352, 292 N.Y.S.2d 416, 418 (1968); see *State ex rel Webb v. City Court*, 25 Ariz.App. 214, 542 P.2d 407 (1975). * * *" 133 Ariz. at 9, 648 P.2d at 124.

In the comments on Rule 6.1(a), enacted following *Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971), the purpose of that part of the rule at issue is explained:

"The second sentence is intended to serve as a directive to law enforcement officials that defense attorneys, their staff, and experts should be given full access to clients, subject only to reasonable time and place limitations required for orderly and efficient jail operations and the maintenance of security. This should alleviate the difficulty, reported by a number of committee members, in communicating with jailed clients." Arizona Proposed Rules of Criminal Procedure, State Bar Committee on Criminal Law (7–15–72) p. 16–17.

The state claims this situation is governed by the Implied Consent Law as discussed in *Campbell*, supra. We disagree. In *Campbell*, the Arizona Supreme Court held an arrested person has no right to counsel in deciding whether to submit to the breathalyzer test or to have his driver's license suspended for six months.

We recognize the noble intent of the legislature in enacting the Implied Consent Law. We also agree with the court in *Campbell*, supra, that "[t]he purpose of the Implied Consent Law is to remove from the highways of this state drivers who are a menace to themselves and to others because they operate a motor vehicle while under the influence of intoxicating liquor." 106 Ariz. at 546, 479 P.2d at 689. Finally, we believe it is "reasonable under the circumstances to require a person to submit to a chemical test of his blood, breath or urine if arrested for driving while intoxicated or face a six months suspension of his driver's license." Id.

But this is not our case. Holland does not face mere suspension of his driver's license under § 28–691 (a civil proceeding).[1] Nor does he argue that any refusal to take the test can be used as evidence against him in a criminal proceeding, and is therefore, self-incriminating. Both of the above results could be viewed as part of a driver's implied consent as a condition to using the highways.

Instead, under the present statute, in a criminal proceeding charged with a felony, Holland faces a possible penalty of 2.5 years, as compared with a license revocation in *Campbell*. As stated by the court in *People v. Shaw*, 127 Misc.2d 607, 486 N.Y.S.2d 607 (Vill.Ct.1984):

"The argument here involves more. The failure to note the benefits of refusal [to take the test] can well result in a detriment to the defendant *at the trial.*

---

1. Even the criminal penalties under § 28–692 in 1971, effective at the time *Campbell* was decided, were in some instances discretionary with the judge as to first convictions and less harsh as to subsequent convictions.

This is not a matter of an administrative penalty effecting the right to use a highway, but concern which goes to the very heart of the defendant's ability to mount a defense in a criminal proceeding. It may well be that the 'better' course would be to accept the 'Penalties' and proceed to trial. . . . At a minimum, the benefits and detriments of each option could only be intelligently assessed in the presence of an attorney, . . ." (Emphasis in opinion). 127 Misc.2d 530, 486 N.Y. S.2d at 610.

No matter how noble the legislative intent underlying the Implied Consent Law, this court cannot, in acknowledging that intent, overlook the valuable right existing in Rule 6.1, nor can we overlook the fact that this right was denied Holland in this case. The Arizona Supreme Court in *McNutt*, supra, limited *Campbell* to an implied consent situation. We need not overturn *Campbell*, as suggested in the dissent, but acknowledge Justice Gordon's distinction in the following language:

"Therefore, a defendant has no right to delay by demanding to consult with counsel before being required to choose between a blood alcohol test or possible driver's license suspension as provided for in A.R.S. § 28–691. *Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971). *If after taking or refusing to take the test a defendant demands to contact a lawyer, he should promptly be given that opportunity.*" 133 Ariz. 7, 10, n. 2, 648 P.2d 122, 125, n. 2. (Emphasis added).

In this case the officer gave Holland that opportunity[2], and just as promptly took it

away by not allowing a private conversation with his attorney. Such a right is also indicated by the language in *McNutt*. Holland was denied "access" by not being able to be advised by his attorney, and because of this, the trial court properly granted dismissal of the case.

We cannot speculate as to how he may have been harmed by this denial, without justification, of a private consultation with his attorney.[3] Therefore, we acknowledge dismissal as the proper remedy.

In affirming the trial court's dismissal in this case, we do not decide, as the court did in *Shaw*, that being compelled to take the breathalyzer test with only penalties for refusal having been mentioned to the accused, is such a "critical stage" as to *require* assistance of counsel.

We decide, given the peculiar facts of this case, that Holland had a right to speak *privately* with his attorney, once the officer made the call, and that *McNutt* does require that an accused promptly be given that opportunity if he demands it. More importantly, *McNutt* says law enforcement officials may not without justification prevent access between an accused and his attorney. That is exactly what occurred in this case.

*McNutt* does not mandate, nor do we consider, that law enforcement officials become jailhouse lawyers, as suggested in the dissent. How hard can it be, how much of a burden can it create, to require an arresting officer to follow the Arizona Supreme Court's ruling in *McNutt*? If an accused so requests, and it does not interfere with the time or taking of the test, he may call

---

2. The record in this case is unclear as to whether or not Holland initially refused to take the breathalyzer. It does say that he had been questioned by the officer prior to his phone call and that he had not taken the breathalyzer. Holland also testified that after the phone call, he refused at first to take the test, and the questioning then continued. Eventually, he took the test.

3. Defense counsel offers, by way of affidavit, that the advice he would have given concerned Holland's decision to take the breathalyzer test. Without being able to ask a single question of his client, specifically concerning his condition and the circumstances surrounding his arrest and time spent in custody, counsel could not possibly know what he would advise his client to do or to refrain from doing. In addition, the transcript of Holland's motion to dismiss reflects defense counsel's inability to advise his client what steps to take to obtain independent blood samples, or a video tape or people to look at him on exculpatory evidence. He states he was only able to advise him not to take the test, because he had no knowledge of his condition from which to advise any of the above.

his attorney and speak to him privately in order to "gather evidence relevant to intoxication close in time to when defendant allegedly committed the crime." 133 Ariz. at 10, n. 2, 648 P.2d at 125, n. 2.

Affirmed.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).

HATHAWAY, Judge, specially concurring.

I agree with Judge Lacagnina's opinion. I note that the defendant's request to contact his attorney appears to have been in response to the *Miranda* warnings. His invocation of the right was honored independently of any condition, request or requirement that he submit to or decline a breathalyzer test. *Campbell* teaches that he was not entitled to consult legal counsel before deciding whether to take the test, but it does not require his election to take or decline the test before he becomes eligible to consult an attorney. I do not find appellant's argument persuasive that a post factum analysis reveals that legal counsel would have guided defendant on the advisability of taking or declining the test. *McNutt* upholds the right to consult privately with counsel and no problem is presented in consultation delaying the testing. Once having afforded the defendant contact with counsel before settling the question of the breathalyzer test, the authorities' refusal to respect the privacy demanded by the attorney/client relationship should not be tolerated.

LIVERMORE, Judge, dissenting.

Defendant's lawyer in this case testified that had he been able to confer privately with defendant he would have found out how much defendant had drunk so that he could determine whether taking the breath test would be advisable. That is surely sensible because the defense of a drunk driving case is substantially easier when incriminatory blood alcohol readings are not present. It is understandable also why defendant wished legal advice because of his uncertainty as to which course of action, taking or refusing to take the breath test, was most advantageous to him. Given the utility of the advice and the requirement of Rule 6.1, Rules of Criminal Procedure, 17 A.R.S., that a defendant be allowed to consult privately with his lawyer "as soon as feasible" after arrest, it is plausible to hold that the defendant was denied his right to a lawyer's assistance in this case.

The problem with this analysis is that it flies squarely in the face of the holding in *Campbell v. Superior Court*, 106 Ariz. 542, 550, 479 P.2d 685, 693 (1971), that a person is "not entitled to the assistance of counsel in deciding whether or not to submit to the breathalyzer test." All that was allegedly denied in this case was the right of consultation concerning whether to submit. There being no such right under *Campbell*, defendant is not entitled to relief. A right is not created because a lawyer is on the phone. Its existence turns on whether the assistance that could be provided is within the constitutional concept of assistance of counsel. *Campbell* held that the assistance denied here was not within that concept, and until our supreme court overturns that decision, we are bound by it.

The theory underlying *Campbell* is that one arrested on probable cause for driving while intoxicated has neither a Fourth nor Fifth Amendment right to refuse to submit to a breath test. *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). He is legally obligated to take the test although he has the physical power to refuse.[1] As *Campbell* noted, therefore, there can be no right to counsel because there is no way in which an attorney can legitimately assist his client. Former DR 7–102(A)(7), Former Rule 29(a), Rules of the Supreme Court, 17A A.R.S., provided

---

**1.** Despite express language to this effect in *Campbell,* counsel testified that taking the test was not required and that he frequently counseled against it. The wish is father to the thought.

that a lawyer should not "counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." Present ER 1.2(d), Rule 42, Rules of the Supreme Court, provides that "a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client...." These strictures, along with the rules regarding disclosure of evidence, Former DR 7–102(A)(3), Present ER 3.4(a), seem to me to forbid a lawyer to counsel his client not to take the legally required breath test. To me such counsel is no different than telling a client not to respond to a subpoena duces tecum or not to testify because the case would go better if the opposing side did not have the evidence they were legally entitled to. If I am wrong, and the role of the lawyer is to counsel disobedience, a clearer statement of that obligation is needed than has yet been forthcoming from our supreme court. And, of course, if that is part of the constitutionally mandated assistance of counsel, *Campbell* must be overturned because all arrested drunks must have the benefit of that advice at this "critical stage" of the proceedings. I recognize that no "lawyer worth his salt," *Watts v. Indiana*, 338 U.S. 49, 59, 69 S.Ct. 1347, 1358, 93 L.Ed. 1801, 1809 (1949), wishes to be powerless to prevent the revelation of damaging information. But neither constitutional rules, court rules, nor statutes ought to be construed to comfort lawyers at the expense of proper resolutuion of issues of more pressing public concern.

The majority seeks to avoid this result by pointing to language in *McNutt v. Superior Court*, 133 Ariz. 7, 648 P.2d 122 (1982), that can be read as limiting *Campbell* to those instances in which consultations with counsel will so delay the test as to imperil

its validity. That risk is obviously not present in this case where counsel was conversing with his client at the time private consultation was denied. There are two problems with this analysis. First, *McNutt* restated the *Campbell* rule and held only that consultation must be permitted immediately after the taking of or refusal to take, the breath test.[2] It is difficult to find a by-implication-holding in this that the accused must be allowed to consult with an attorney if such consultation will not unreasonably delay the taking of a breath test. Second, in dealing with the right to consult with counsel we deal with a constitutional right. Constitutional rights are not limited by the awkwardness their exercise may create for law enforcement authorities. If there is a right to consult with counsel, it must be given to all accused regardless of how great the practical burden thus created.

It is possible to avoid this by saying that the language of Rule 6.1 creates a non-constitutional right to consultation. The committee comment accompanying the rule, however, shows that the rule was drafted in order to meet constitutional mandates. Before construing the rule to allow consultation, we should pause to consider the difficulties that may be created. How is the officer to know how long he must delay the test before concluding that consultation is not feasible? How great will be the burden on law enforcement to attempt to reach lawyers on behalf of arrested drunk drivers? Does this right of consultation extend only to those fortunate enough to know a lawyer they may call? If so, is this a right reserved to the more affluent members of our society? If not, must counsel be made available to those without means of reaching a lawyer? Could all interests be served by mandating a warning[3] that

---

2. The majority suggests that *McNutt* was violated because there are passing references to the loss of exculpatory evidence in the record. A fair reading of the record, however, reflects that no such claim is being made. Rather, defense counsel was asserting that there was a right to consult with an attorney prior to taking the test. This is reinforced by the attorney's business

card, see note 3, infra, which expressly asserted that right.

3. Such quasi-*Miranda* warnings could be added to the business card of defendant's lawyer, a card that defendant was carrying on the night of his arrest. That card read:

taking the test when really drunk results both in loss of license and conviction while refusing the test results in loss of license but a fighting chance to avoid conviction? Should those arrested be furnished a table showing probable blood alcohol levels given different consumption levels? These are questions better addressed by a committee drafting rules after inquiry into the practical effect of a particular rule than by a court expanding language drafted for one purpose to encompass other purposes.

Because I believe, on the authority of *Campbell,* that no constitutional right of consultation was denied and because I believe that Rule 6.1, as drafted, ought not be construed to create a non-constitutional right of consultation in this circumstance, I dissent.

TELEPHONE
253–0506 (24 hours)

PEYTON A. KERR III
ATTORNEY AT LAW

SUITE 622 LUHRS BUILDING
11 WEST JEFFERSON
PHOENIX, ARIZONA 85003

NOTICE OF INVOCATION OF RIGHT TO REMAIN SILENT, REQUEST TO CONSULT WITH ATTORNEY BY MEANS OF A CONFIDENTIAL TELEPHONE CALL DURING WAITING PERIOD PRIOR TO ADMINISTRATION OF BREATH TEST, REFUSAL TO PERFORM PHYSICAL DEXTERITY TESTS, AND REQUEST FOR PRODUCTION AND PRESERVATION OF POTENTIALLY EXCULPATORY EVIDENCE.

(1) I understand that I have the right to remain silent and I hereby invoke this right and expressly refuse to answer any questions. I also understand that I have the right to consult with an attorney and I hereby request to be permitted to make a confidential telephone call to my attorney during the waiting period prior to being administered a breath test to determine the alcoholic content of my blood.

(2) I understand that I have the right to refuse to perform any physical dexterity tests, and I hereby expressly refuse to perform any such tests. I also object to either a pupil light reaction test being performed upon me or a bright light being shown in my eyes.

(3) If I am arrested and charged with the offense of operating or being in actual physical control of a motor vehicle while under the influence of intoxicating liquor, then I request the production and preservation (in accordance with Rule 28.2, Arizona Rules of Criminal Procedure) of the following potentially exculpatory evidence and I agree to pay all reasonable costs that may be assessed against me as a result of compliance herewith:

(a) The test ampoule and mouth piece if I am administered a breath test on the "Breathalyzer" instrument.

(b) If I am administered a breath test then regardless of what type of instrument is used. I request that the administration of the test be videotaped and that a sample of my breath be collected, preserved and furnished to me for independent testing.

(4) I understand that I have the right to be released from custody at the conclusion of your investigation in order to have a blood sample taken for independent testing. I hereby request to be released from custody upon signing my written promise to appear in court on any charges that may be filed against me in order to obtain a sample of my blood taken shortly after my arrest.

(5) I request that my arresting officer sign and date this form where indicated, impound a copy of this form for evidence in this case, and return the original of this form to the undersigned person at the time of his release from custody.

ARRESTING OFFICER _____

DATE _____ TIME _____

The assertion of the right to consult an attorney before the breath test is, of course, squarely contradicted by *Campbell.*